### State of Vermont v. Walter F. Clark

(101 A2d 868)

Special Term at Rutland, November, 1953.

Present: **Sherburne, C. J., Jeffords, Cleary, Adams and Chase, JJ.**

Opinion Filed January 5, 1954.

132

*Everett L. Hathorn* for the respondent.

*Lewis E. Springer, Jr.*, State's Attorney, for the State.

Sherburne, C. J.   This is a prosecution for a violation of V. S. 47, §7583, upon an information charging that the respondent on September 4, 1952, did knowingly permit his cattle to go upon the land of Gordon Clogston after the latter had given him notice thereof.   The only exception briefed is to the denial of respondent's motion for a directed verdict made at the close of all the evidence.

Viewed most favorably to the State the evidence reasonably tended to show the following facts: For several years Gordon Clogston has owned and resided upon a lot of land in Norwich, located on the highway known as route 132 about one half mile from Union Village, so-called.   This land adjoins the farm of the respondent located to the north and west

and upon such highway. The portion of this farm between the location of a barn of respondents which had burned and the Clogston lot had been turned into a pasture, which was used by the respondent during the summer of 1952 for pasturing about 50 head of his cattle. Three or four years previously the respondent had erected a four wire cedar post fence along the highway side, which by the summer of 1952 had gotten badly in need of repair because of broken and loose wires, and so remained until after September 4. Along the line between this pasture and the Clogston lot was an old fence which the respondent had repaired to some extent. During that summer one or more of respondent's cows got loose and came down the road and went upon the Clogston lot a number of times. Sometimes they would get through the fence along the highway, but they usually came from respondent's house or barn, and they often came at night. Finally about the end of August, Clogston told the respondent that his cows were getting upon his land, told him how they were getting there, and told him to keep them at home. During the night of September 4, 1952, the respondent's cows came again. On the next day· the Clogston garden and lawn were found to be covered with cattle tracks and manure, not much was left in the garden and the shrubbery was eaten. Most of the tracks were at the farther end of the Clogston yard toward the respondent's land. The tracks went through the Clogston yard to the end of the fence and then to the highway. There was no break in the fence on the boundary between Clogston and the respondent, and there were no tracks through this fence. On the same day there were observed to be 10 or 12 head of cattle in an open field on the respondent's farm beyond where the barn had burned.

■■ The phrase "knowingly permits" in V. S. 47, §7583 is to be construed the same as the like phrase in §7577, relating to domestic animals running at large. Merely permitting cattle to go at large implies knowledge, consent or willingness on the part of the owner or custodian, or such negligent conduct as is equivalent thereto. *Sullivan* v. *State*, 21 Okla Cr 410, 209 P 181; *Montgomery* v. *Breed*, 34 Wis 649; *Coles* v. *Burns*, 21 Hun, N Y, 246; 3 CJS 1231. Under a

statute forbidding the mere permitting cattle to go at large, the neglect of the owner or custodian to exercise reasonable care in restraining them affords sufficient proof, in case they escape, that they were permitted to go at large. *State* v. *Poplowski*, 104 Conn 493, 133 A 671.

■ It follows that under a statute forbidding the "knowingly" permitting cattle to go upon the land of another, the State must prove facts which will justify a jury in finding beyond a reasonable doubt that the cattle went upon such land, either by the voluntary act of the owner or custodian, or by reason of his having knowingly neglected to restrain them. The word "knowingly" as here used imports a knowledge of the essential facts from which the law presumes a knowledge of the legal consequences arising therefrom. *Crawford* v. *Joslyn*, 83 Vt 361, 362, 76 A 108. So, for example, if one pastures his cattle unattended in an unfenced field, which abuts upon the highway and adjoins land of another located upon the same highway, and the cattle go therefrom into and along the highway and go upon such adjoining land, he has knowingly neglected to restrain them, because of the well known tendency of cattle in such circumstances to stray. The same rule also applies when the cattle escape through a defective fence between the field and highway, when the owner knows that the cattle will be likely to escape through such fence.

■■ When, as here, the evidence relied upon to show that the respondent knowingly neglected to restrain his cattle from going upon the Clogston lot is entirely circumstantial, the circumstances proved must exclude every reasonable hypothesis except that the respondent is guilty. *State* v. *Baker*, 115 Vt 94, 97, 53 A2d 53; *State* v. *Goodhart*, 112 Vt 154, 158, 22 A2d 151; *State* v. *Foss*, 110 Vt 453, 458, 8 A2d 648; *State* v. *Rounds*, 104 Vt 442, 449, 160 A 249. Or, to put it differently, such evidence must be so cogent as to exclude every reasonable theory consistent with the respondent's innocence. *State* v. *Levy*, 113 Vt 459, 35 A2d 853; *State* v. *Boudreau*, 111 Vt 351, 361, 16 A2d 262. A verdict of acquittal should be directed on motion by the respondent, when the evidence raises only a

suspicion of guilt, or leaves it uncertain or dependent upon conjecture. *State* v. *Levy, supra*; *State* v. *Rounds, supra*.

■ From the tracks observed on September 5, 1952, it can reasonably be inferred that respondent's cattle did not get through the fence on the boundary line between Clogston and the respondent, but came by way of the highway. Although the evidence of how the respondent's cattle had previously gotten loose and gone upon the Clogston lot may not have been admissible to show that his cattle went there on September 4, 1952, because of his negligent failure to restrain them, (See *Nones* v. *Northouse*, 46 Vt 587, 593; *Loomis* v. *Abelson*, 101 Vt 459, 461, 144 A 378; *State* v. *Lapan*, 101 Vt 124, 140, 141 A 686;) it was for the consideration of the court and jury, since it came in without objection so far as appears; but it cannot be given more than its legitimate probative effect. *Dieter* v. *Scott*, 110 Vt 376, 383, 9 A2d 95. The only probative effect of this evidence is to raise a suspicion that on the date in question respondent's cattle either escaped through his fence beside the highway, or were or became loose near his barn because of some unexplained negligent failure to restrain them.

Had it been shown that on September 4, 1952, the cattle escaped through the fence beside the road it might possibly be inferred that because of the Clogston notice, if for no other reason, the respondent knew that his cattle would be likely to get through it and go upon the Clogston lot, and so knowingly neglected to restrain them. Had it been shown that the cattle came from the vicinity of respondent's buildings, it might possibly be inferred that a prima facie case of negligence was made out, but without more, in view of the many ways in which the cattle might get loose, such as the negligence of hired help or mere inadvertence, it cannot be inferred that the respondent knowingly neglected to restrain his cattle without resorting to conjecture. All that can be inferred from the evidence about cattle being loose on respondent's farm on the next day is that they were still loose after trespassing on the Clogston lot.

The evidence fails to show beyond a reasonable doubt that the respondent knowingly permitted his cattle to go

upon the Clogston lot. It was error to deny respondent's motion for a directed verdict.

*Judgment reversed, conviction and sentence set aside and respondent discharged.*