Jacqueline Garber v. Department of Social Welfare

[431 A.2d 469]

No. 32-80

Present: Barney, C.J., Larrow, Billings and Hill, JJ., and Shangraw, C.J. (Ret.), Specially Assigned

Opinion Filed April 21, 1981

*Paula J. Kane,* Vermont Legal Aid, Inc., St. Albans, for Plaintiff.

*M. Jerome Diamond,* Attorney General, Montpelier, and *Steven B. McLeod,* Assistant Attorney General, Waterbury, for Defendant.

Barney, C.J. The Department brought proceedings to recoup a claimed overpayment of certain welfare benefits from the plaintiff. She then sought a fair hearing before the Human Services Board, where the Department's claim was affirmed. This appeal followed.

It is the position of the Department that in 1975 the plaintiff was overpaid benefits under the Aid to Needy Families With Children (ANFC) program. The overpayment was claimed to have come about because the plaintiff failed to report, upon first receipt, certain unemployment benefits she applied for at the direction of the Social Welfare worker whose client she was. It is unquestioned both that she duly reported the receipt of unemployment benefits at the first routine review of her ANFC grant, in February, 1976, and

that this is how the Department became aware of the overpayment.

In June of 1977 the Department determined that recoupment should be undertaken. At that time the plaintiff was no longer receiving benefits. As a result, she was not notified of any claim of irregularity, nor was any action taken, until she applied for ANFC benefits in November, 1978, about three years after the overpayment. The evidence discloses that in the two and a half years between the overpayment and the recoupment action she had been receiving ANFC benefits from February, 1976, to October, 1976, and from January, 1977, to June, 1977. In November, 1978, she received notice for the first time that, although she would be receiving benefits, they would be reduced by $27 a month until $774 had been recovered based on claimed overpayments from September, 1975, through February, 1976.

A review of the Department's actions right at that point reveals a number of improper departures from its own regulations, mistakes, disregard of the rights of the plaintiff, and a distressingly unprofessional approach. In the first place, under Department regulations the plaintiff was entitled to ten days' notice in advance of any recoupment, as well as a conference with the Department at which, if recoupment was required, she would be given an option to select among alternative ways to repay. Moreover, she was deprived of her right to a hearing before the Department acted. Beyond that, the Department incorrectly claimed that the period of overpayment was from December, 1976, to June, 1977. It ultimately developed that the dates the Department really was relying on were from "sometime" in September, 1975, to February, 1976. Also, as it later developed, the irregular recoupment was precipitated by a report which concluded, prior to any investigation and in most inappropriate and prejudicial language, that the plaintiff was obviously guilty of deliberate and perhaps premeditated fraud.

The plaintiff responded to this by requesting a fair hearing. Commendably, the Department took steps to undo some of the damage. Under order of the hearing officer, it ceased making the recoupment deductions from the ANFC grant. It restored the amounts taken in the interval between the grant and the

commencement of full payment. It committed itself to holding a prerecoupment conference should the Department prevail in establishing its right to recover.

The improper actions by the Department form the basis of one of the plaintiff's arguments that recoupment against her should not be allowed. She claims that the Department overrode her rights by these wrongful acts to the point of denying her proper procedural protection, in violation of *Goldberg* v. *Kelly*, 397 U.S. 254 (1970), and should result in the denial of recovery to the Department.

Egregious as the conduct of the Department was, the Court finds that the corrective acts, taken together with the full hearing accorded the plaintiff, were sufficient to protect her interests and insure fair consideration of her contentions. On that basis, we agree with the Board that the Department should not be denied recoupment on that ground.

Turning now to the fair hearing, we are confronted with the plaintiff's claims of further irregularities and shortcomings in the Department's case. She advances two grounds for reversing the decision of the Board:

> 1. That a finding of wilful withholding of information by the plaintiff was a prerequisite to a recoupment decision, and was not made by the Quality Control Division as required; and

> 2. That the evidence presented by the Department was insufficient to sustain its burden of proof according to the standard of "clear and convincing" which she asserts is the appropriate evidentiary level.

In her contention that the Quality Control Division finding of wilfulness is lacking, the plaintiff is here also faulting the Department for failing to follow its own procedures. She cites the Department's internal regulations requiring a district office to refer a case where fraud is suspected to a separate unit called the Quality Control Division. Such a reference was made here, as the evidence shows, but the document introduced demonstrating that referral makes no finding of wilfulness at all. Since that is the investigatory purpose of the referral, the plaintiff argues that, without such finding, the subsequent procedures are fatally flawed and must be dismissed.

Although it is, under the regulations, the function of the Quality Control Division to carry out such investigations, those directions are a matter of the internal operating procedures of the Department, and not a necessary predicate to prosecution. We agree with the Board's conclusion that it is sufficient if the elements necessary to support the claim of recoupment are developed as part of the evidence at the fair hearing, whatever the shortcomings of the Quality Control Division report.

The plaintiff's last claim of error declares that the evidence at the hearing was insufficient to support the Board's finding of a wilful withholding of information. If the recoupment is to be allowed, the finding of "wilfulness" is crucial in this case.

■ Under the authority of the applicable portions of the Code of Federal Regulations, the state regulations here established three kinds of procedures for recovery of overpayments. Where wilfulness is not involved, the right of recovery is circumscribed and may not be recouped from current assistance payments. 45 C.F.R. § 233.20(a)(12)(i)(A)(1) (1980); W.A.M. § 2154.2(b). Where wilfulness is involved, recovery of overpayments made within 12 months of discovery may be made from current assistance payments, as is sought here. 45 C.F.R. § 233.20(a)(12)(i)(A)(2) (1980); W.A.M. §§ 2154(2)(c) and (d). Where there has been a finding by a court that a recipient was guilty of fraud, the Department is not limited to current assets or subject to the one-year time limit. W.A.M. § 2154.2(e); 33 V.S.A. § 2581(a).

The three classes of cases represent an ascending order of severity, with the last a criminal prosecution calling for proof beyond a reasonable doubt. The Board determined that the second level, involving the "wilfulness" issue, was analogous to a civil fraud situation, and applied the standard of clear and convincing evidence. See *Lincoln* v. *Emerson*, 137 Vt. 301, 303, 404 A.2d 508, 510 (1979). We find this appropriate.

Accepting that standard, the question becomes an inquiry into whether the evidence on which the Board based its order was sufficient. Although the Department makes free with the term "fraud" in this case, it is plain that the issue is rather whether there was a wilful failure to report unemployment compensation as income. There is no challenge to the fact of an overpayment.

Turning again to the federal regulations, we find that 45 C.F.R. § 233.20 (a) (12) (i) (B) (*2*) (1980) provides:

> (B) Withholding of information which is subject to the provisions of paragraph (a) (12) (i) (A) (*2*) of this section includes the following:
>
> . . . .
>
> (*2*) A willful failure by the recipient to report changes in income, resources or other circumstances which may affect the amount of payment, if the State agency has clearly notified the recipient of an obligation to report such changes. The recipient shall be given such notification periodically at times (not less frequently than semiannually) and by methods which the State agency determines will effectively bring such reporting requirements to the recipient's attention.

Subparagraph (a) (12) (i) (C) (*2*) provides:

> (C) Each periodic notification under paragraph (a) (12) (i) (B) (*2*) of this section shall:
>
> . . . .
>
> (*2*) Specifically and comprehensibly in simple phraseology indicate the type of information to be disclosed by the recipient. Examples shall be furnished of the most frequent types of newly acquired income or resources (e.g., inheritance, wages from a part-time job).

The proof advanced by the Department took two forms. The first consisted of the documents which the plaintiff was required to sign or complete when applying for benefits. Each admonished the plaintiff to "report any change in any household situation (including persons moving in or out of [her] home), change of address, income, or resources which may affect [her] level of benefits or continued eligibility for assistance."

The other evidence consisted of testimony as to the habitual practice of the caseworker for the plaintiff to orally advise her clients that unemployment compensation was additional income that had to be immediately reported. Because of the lapse of time the worker stated she could not recall specifically giving such information to this plaintiff, but that it was her

unvarying custom to do so. Another caseworker testified that it was Department practice to give such instructions. The plaintiff, in her testimony, did not deny receiving the information, but simply stated she had no recollection of being so informed.

This caseworker testimony was not objected to below, but the plaintiff challenges it here. This brings it squarely within *State* v. *Clark*, 118 Vt. 131, 135, 101 A.2d 868, 870 (1954), which gave such evidence probative effect, since it came in without objection. It should perhaps be noted that although *State* v. *Lapan*, 101 Vt. 124, 140, 141 A. 686, 694 (1928), seems to restrict the use of such evidence, our earlier cases have found it acceptable, *Hine* v. *Pomeroy*, 39 Vt. 211, 220 (1867), and both Wigmore and McCormick in their treatises criticize its rejection. McCormick, Evidence § 195 (2d ed. 1972); 1 Wigmore on Evidence §§ 92–93 (3d ed. 1940). The trial court must, however, weigh its admission against the necessity for the habit evidence and the inconvenience that proving the habit may pose upon the court. In any case, in the matter before us, it was available to the Board in its fact-finding function.

However, it does not follow that the Department's evidence, even though admissible, was sufficient to sustain the result reached. It must still be substantial enough to meet the "clear and convincing" standard. See *Lincoln* v. *Emerson, supra,* 137 Vt. at 304, 404 A.2d at 510. Unlike direct evidence, subject to appraisal by the trier, the evidence presented here requires the drawing of an inference, and one certainly far from compelled. In our view, the applicable standard was not met, and recoupment should not have been allowed.

The Court is also constrained to comment that the Department could do better in carrying out its duty to notify recipients of their burden to disclose certain information. With the multitudinous forms and certificates that the Department uses, it would seem that information which the recipient should report could be plainly pointed out so as to make reliance upon oral testimony alone to demonstrate specific and comprehensible notice unnecessary. To expect the ordinary welfare recipient to understand that unemployment compensation is a form of reportable income for welfare assistance purposes when it constitutes neither earnings nor income in

other contexts is hardly consistent with the Department's obligation to bring such reporting requirements effectively to the recipient's attention.

*The judgment of the Human Services Board is reversed. To be certified to the Department of Social Welfare.*