### In re Trudy J. Smith

[730 A.2d 605]

No. 97-417

Present: **Dooley, Morse, Johnson and Skoglund, JJ., and Cashman, D.J., Specially Assigned**

Opinion Filed April 9, 1999

*William H. Sorrell*, Attorney General, and *Eve Jacobs-Carnahan*, Assistant Attorney General, Montpelier, for Appellant.

*Paul Gillies* of *Tarrant, Marks & Gillies*, Montpelier, for Appellee.

**Skoglund, J.** The State appeals the Washington Superior Court's remand of the Board of Nursing's decision to suspend the nursing license of appellee, home-health nurse Trudy Smith. The superior court remanded the case, ordering the Board to apply a clear and convincing standard of proof, rather than preponderance of the evidence, and on remand to exclude from consideration hearsay evidence presented by the State in the suspension hearing. We reverse and reinstate the Board's decision.

Appellee served as the primary home-health nurse for two elderly patients, L. and M., who accused her of taking some of their prescription Percocet, a narcotic drug, during September and October 1994. At the time of the alleged misappropriations of Percocet, appellee possessed a probationary nursing license from the Board that contained a condition requiring her to remain drug and alcohol-free. On October 17, 1994, prior to L. and M.'s reporting the allegations, the Board had fully reinstated defendant's license. On October 28, 1994, during a regularly scheduled visit from another home-health nurse, who until the spring of 1994 had been their primary nurse, M. reported that some of their drugs were missing and that they suspected appellee took them. The nurse immediately called the home-health supervisory nurse to relay the allegations. The supervising nurse met that same day with the patients to discuss the allegations and then reported appellee to the Board. As a result of the Board's investigation into the allegations, it charged appellee with unprofessional conduct.

On December 13 and 14, 1994, the Board held an evidentiary hearing. Neither L. nor M. testified at the hearing. Appellee's supervisor and the other home-health nurse testified at the hearing regarding L. and M.'s accusations. The supervising nurse stated that M. said she kept her bottle of Percocet by the telephone, moved it to her sock drawer after she noticed some tablets missing, and then she did not notice any more tablets disappearing. L. reportedly conveyed a similar set of facts to the supervising nurse. He kept his bottle of Percocet by the kitchen sink, changed the location to a cupboard next to the kitchen sink after he had noticed that tablets were missing, continued to find tablets were missing, and then put them in another cupboard in the kitchen behind boxes of pasta, after which no further

tablets disappeared. The supervising nurse testified that these patients said appellee would make unscheduled visits on occasion, either to use the telephone or to use the bathroom. According to the supervising nurse, both patients said that on the occasions when she used the bathroom she would wash her hands at the kitchen sink even though there was a sink in the bathroom. She also testified to the fact that patient M. was hospitalized on October 8 and returned to home-health care on October 14.

The patients' former primary home-health nurse testified concerning their physical ailments and current health status. According to her, M.'s medical condition kept her in the apartment and, although L. did sometimes go out, it would have been difficult for him to make it to the hearing given the cold weather. The nurse described a home-health visit on October 18, 1994, in which L. displayed uncharacteristic anger and ranted about the home-health nurse service. She stated that it seemed to her a disproportionate reaction to the scheduling confusion that had arisen that day. She then related the circumstances in which M. first reported her suspicions of appellee and what M. had specifically said. Further, she testified that M. appeared distressed by making the report and said that M. stated she cared for the appellee and wanted her to get help. Finally, the nurse testified to the patients' continued emotional distress and decline in physical health since they had reported their suspicions of appellee.

The State adduced further testimony regarding L. and M.'s allegations from the investigator on the case. The investigator spoke to L. and M. in the presence of the supervising nurse. L. reportedly related to him the following incident. L. stated that, to discover who was taking their Percocet, he and M. devised the plan to plant two tablets near the telephone in M.'s bedroom and to check if they were still there each time after a visitor left. While M. was in the hospital, appellee made an unscheduled visit to the apartment. She used the telephone, and, after she had left, L. found that the two Percocet were gone. The investigator in addition testified to his review of L. and M.'s pharmacy records, confirming M.'s Percocet prescription and clarifying that what L. had sometimes referred to as Percocet was actually a prescription for Propacet, another narcotic drug.

In his opening statement, appellee's attorney stated that "evidence as it will be presented to you today lacks a core piece of evidence; that is, the presence of L. and M." He went on to explain hearsay under the rules of evidence and the hearsay rule for administrative proceedings, then stating that the testimony the State presented would test

these rules. Nonetheless, the witnesses testified to the facts detailed above without objection from appellee to the specific questions or answers. In fact, during the testimony appellee raised only one objection — when the State questioned whether M. told the home-health nurse what L.'s feelings were about the disclosure.

Applying a preponderance of the evidence standard of proof, the Board found that the appellee took two Percocet from L. and M.'s apartment during the week of October 8, 1994. The Board concluded that: appellee's unprofessional conduct was of a character likely to harm the public; diversion of the Percocet was a violation of the conditions on appellee's license at the time of the incident; and, based on a review of her pharmacy records over the past eight years, appellee had an active, untreated addiction to narcotics. The Board ordered appellee's license suspended, conditioning reinstatement on fulfillment of certain conditions.

Appellee appealed the Board's decision to an appellate officer, contending there was insufficient evidence to support the Board's findings and conclusions and attacking the Board's reliance on hearsay evidence. Without reaching the hearsay issue the appellate officer upheld the Board's conclusion that appellee had an active, untreated addiction to narcotics, but reversed the Board's other conclusions. By characterizing the burden of proof in a "theft" case as requiring more than evidence of nonexclusive opportunity to take the object later found missing, which the Board found the State had not even shown, and by citing to a criminal case in support, the appellate officer appeared to employ the criminal law standard of proof: beyond a reasonable doubt. Both parties appealed to the superior court.

Before the superior court, appellee continued to contest the Board's conclusions on sufficiency of the evidence grounds. That is, appellee argued insufficient evidence existed to uphold the Board's conclusion appellee had an active, untreated addiction. By contrast, the State appealed the appellate officer's use of the criminal law standard of proof, arguing that the officer should have upheld the Board's decision based on the standard of proof the Board had applied, that is, preponderance of the evidence. In addition, the State asked the court to address the hearsay issue. The State maintained that appellee waived any challenges to admissibility by failing to adequately object to the presentation of the hearsay statements at the time the Board heard the testimony.

The superior court rejected both the standard of proof applied by the appellate officer and the standard of proof applied by the Board,

holding instead that, given the seriousness of the disciplinary process and the potential loss of livelihood, the Board should have applied a clear and convincing evidence standard of proof. The court therefore remanded the case back to the Board for a new evidentiary hearing. At the parties' request and in the interest of judicial economy, the court addressed the question of whether the hearsay evidence presented at the first hearing would be admissible if the Board heard the matter again on remand. The court ruled that on remand the hearsay statements would be inadmissible.

The State's appeal to this Court followed. On appeal, the State asserts, as it did before the superior court, that the Board's decision applying the preponderance of evidence standard to the disciplinary hearing should have been upheld. Further, the State again maintains appellee waived her hearsay objections. Finally, it continues to argue that, employing the preponderance of evidence standard, sufficient evidence existed to support the Board's finding appellee took two Percocet tablets from the patients' apartment during the week of October 8, 1994.

■ We first address this Court's jurisdiction to consider the appeal as it was not taken from a final judgment. See *Huddleston v. University of Vt.*, 168 Vt. 249, 251, 719 A.2d 415, 417 (1998) (superior court's remand to university did not resolve controversy between parties and therefore was not final judgment); *In re Cliffside Leasing Co.*, 167 Vt. 569, 570, 701 A.2d 325, 325 (1997) (mem.) (no final judgment where environmental court remanded matter for town's review of permit application). Although the State failed to request permission to take an interlocutory appeal, see V.R.A.P. 5, we have previously suspended application of Rule 5 where dismissal would most likely result in another appeal after remand, the merits of the question of law were fully briefed and argued, and the Court has expended valuable time on the case. We therefore exercise our discretion under V.R.A.P. 2 to entertain the appeal.

## I.

The State claims that both the appellate officer and the superior court erred by applying the wrong standard of proof. According to the State, the Board properly applied the preponderance of evidence standard in rendering its decision, but the appellate officer and the superior court committed error in measuring the Board's findings of fact against the standards, respectively, of beyond a reasonable doubt

and of clear and convincing evidence.* Appellee urges us to affirm the superior court's determination that nurse licensing proceedings merit the higher civil standard reserved for important rights.

■ Neither party argues in favor of the appellate officer's apparent use of beyond a reasonable doubt as the standard by which to judge the evidence here, and we can quickly dispense with that standard as in any way applicable to this case. The superior court correctly concluded the appellate officer erred since we have previously held that an allegation underlying a civil proceeding that could potentially comprise the basis for a criminal charge does not change the burden of proof in the civil case. See *Harrington v. Department of Employment & Training*, 152 Vt. 446, 448-49, 566 A.2d 988, 990 (1989); *Lyndonville Sav. Bank & Trust Co. v. Peerless Ins. Co.*, 126 Vt. 436, 439, 234 A.2d 340, 342 (1967). Thus, we turn to the more substantial question of whether to uphold the Board's use of the preponderance standard or to affirm the superior court's remand for application of the clear and convincing evidence standard.

■ Our case law provides that preponderance of the evidence is the usual standard of proof in state administrative adjudications. See *Huddleston*, 168 Vt. at 252, 719 A.2d at 417. That is, the burden of persuasion on factual issues before an administrative body is normally met by a preponderance of the evidence. See *In re Muzzy*, 141 Vt. 463, 472, 449 A.2d 970, 974 (1982). We have upheld an agency's deviation from the normal civil standard in two instances, both of which applied the clear and convincing evidence standard in a civil fraud situation. See *Harrington*, 152 Vt. at 449, 566 A.2d at 990; *Garber v. Department of Soc. Welfare*, 139 Vt. 487, 491, 431 A.2d 469, 472 (1981).

The State contends a 1997 legislative amendment, which was adopted after the commencement of this action and which established preponderance of the evidence as the burden of proof for licensing board disciplinary actions, supports the Board's use of the preponderance standard in this case. Appellee counters that, rather than confirming existing practice, the enactment indicates a material change in the standard.

---

*The State claims as a threshold matter that we should not reach the standard of proof issue because appellee failed to preserve an objection to application of the preponderance standard. We disagree in light of the appellate officer's recourse, sua sponte, to a different standard and the superior court's use of yet a third standard.

The Nursing Board has long had the authority to investigate complaints of unprofessional conduct, see 26 V.S.A. § 1574(7), and to suspend or condition nursing licenses for conduct likely to harm the public. See *id.* § 1582(a). The enabling statute does not state an evidentiary standard for license suspension proceedings. See *id.* §§ 1571-1584. In discharging its regulatory powers, however, the Board's practice has been to employ the preponderance of the evidence standard in disciplinary actions. In addition to the nursing statute, Vermont's Administrative Procedure Act (APA) conditions the Board's exercise of its regulatory authority. See *id.* §§ 1582(a) (requiring notice and opportunity for hearing under APA), (b) (requiring Board to establish disciplinary process based on APA); see also previous version *id.* § 1573(8) (Cum. Supp. 1993) (requiring Board to adopt rules under APA necessary for implementation of statute). Since 1989, the professional regulation statute has further defined the Board's disciplinary powers. See 3 V.S.A. § 129. Like the Board's enabling statute, however, at the time of the hearing at issue both Vermont's APA and the professional regulation statute were silent with respect to the proper standard of proof for contested-case hearings. See *id.* §§ 129, 809-815. But see *id.* § 129a(b) (Cum. Supp. 1998) (enacted subsequent to commencement of instant litigation).

■ Although the Court as well as the administrative agency must adhere to legislative intent as unambiguously expressed by the plain language of a statute, where a statute is silent or ambiguous regarding a particular matter this Court will defer to agency interpretation of a statute within its area of expertise as long as it represents a permissible construction of the statute. See *Dutton v. Department of Soc. Welfare,* 168 Vt. 281, 284, 721 A.2d 109, 111 (1998); *Shedrick v. Department of Soc. Welfare,* 158 Vt. 541, 546, 613 A.2d 692, 694 (1992). When the Legislature fails, however, to establish the degree of proof required in an administrative proceeding, the court is the traditional and most appropriate forum to prescribe a standard. See *Bender v. Clark,* 744 F.2d 1424, 1429 (10th Cir. 1984); see also 2 K. Davis & R. Pierce, Administrative Law Treatise § 10.7, at 169 (3d ed. 1994) (preponderance of evidence is standard applicable to most factual issues, but Congress or courts sometimes establish higher standard applicable to particular class of disputes); cf. *Huddleston,* 168 Vt. at 252, 719 A.2d at 417-18 (nothing in APA or Court's previous interpretations of burden of proof applicable to certain agency adjudications alters conclusion that statute authorizing University of Vermont to determine student residency encompasses adoption of

burden of proof). We therefore review on a nondeferential basis the question of which standard of proof the Board should have used to evaluate the evidence in this disciplinary action against appellee's nursing license.

The 1997 act, entitled "An Act Relating to Efficiency in the Regulation of Professions and Occupations," added a provision that states the "burden of proof in a disciplinary action shall be on the state to show by a preponderance of evidence that the person has engaged in unprofessional conduct." 1997, No. 40, § 5 (codified as 3 V.S.A. § 129a(b)). Absent an express legislative declaration that an enactment amends or clarifies existing law, an enactment considered alone does not indicate whether it effects a change in form or substance, and thus we look to circumstances surrounding the enactment. See N. Singer, 1A Sutherland Statutory Construction § 22.30, at 267 (5th ed. 1994); see also *Fitzgerald v. Congleton*, 155 Vt. 283, 291 n.6, 583 A.2d 595, 600 n.6 (1990) (noting that, where language change is part of general statutory revision as opposed to direct amendatory act, arguably change may not be intended to alter meaning); *Town of Cambridge v. Town of Underhill*, 124 Vt. 237, 241, 204 A.2d 155, 158 (1964) (stating that, despite rule of presumed change, we will not implement interpretation contrary to legislative intent where circumstances indicate clarification). Prior to the Legislature's adoption of the blanket burden-of-proof provision applicable to all licensing board regulation of unprofessional conduct, it had begun piecemeal amendment of some regulatory sections governing specific professions by adding more detailed provisions on "unprofessional conduct" and "disciplinary action." See, e.g., 1991, No. 236 (Adj. Sess.) (codified as 26 V.S.A. § 541 (unprofessional conduct and discipline of chiropractors)); 1989, No. 253 (Adj. Sess.) (codified as 26 V.S.A. §§ 1842-1843 (unprofessional conduct and discipline of osteopaths)). These earlier amendments likewise placed the onus specifically on the State to demonstrate unprofessional conduct by a preponderance of the evidence. "The burden of proof in a disciplinary action shall be on the state to show by a preponderance of the evidence that the person has engaged in unprofessional conduct." 26 V.S.A. §§ 541(d), 1843(b). The subsequently enacted blanket provision used precisely the same language. Compare 3 V.S.A. § 129a(b). Further, the blanket burden-of-proof provision overrides contrary standards of unprofessional conduct set forth elsewhere. See 1997, No. 40, § 5 (codified as 3 V.S.A. § 129a(d)). Thus, for those statutory sections previously silent concerning the burden of proof, § 5 consti-

tutes an addition, and, for those sections previously setting forth the burden of proof, § 5 constitutes an amendment.

We do not construe the addition of a burden of proof to the umbrella "unprofessional conduct" statute, as appellee would have it, as lowering the burden of proof in the nursing statute from clear and convincing evidence to preponderance of the evidence. We would hesitate to infer a higher standard of proof from legislative silence. See 2 K. Davis & R. Pierce, *supra*, § 10.7, at 170-71. Thus, we conclude that the Legislature's adoption of language for all licensing boards identical to that previously adopted for specific professions relates to the Act's purpose of more efficient regulation. That is, by setting one standard for all professions and occupations regulated by the Secretary of State the Legislature intended, not to lower an extant burden of proof for nurse licensing actions, but to avoid the inefficiency of administering a patchwork of standards adopted by various boards. Hence, while the addition of 3 V.S.A. § 129a(b) does not directly support the State's position, neither does it favor appellee.

Appellee next argues against the generally accepted civil standard on the basis that a license suspension is punitive in nature and that her ability to make a living in her chosen field has been affected. Both claims implicitly rest on due process grounds. The due process requirements imposed by Article 10 of the Vermont Constitution mirror those imposed by the United States Constitution. See *Relation v. Vermont Parole Bd.*, 163 Vt. 534, 537-38, 660 A.2d 318, 319-20 (1995); see also *LaFaso v. Patrissi*, 161 Vt. 46, 51, 633 A.2d 695, 698 (1993) (adopting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Since the process due in a given administrative proceeding depends on the interest at stake, we first note that appellee misconstrues *In re Ruffalo*, 390 U.S. 544 (1968), the case upon which she relies in contending that professional discipline is a quasi-criminal process. Although *Ruffalo* is a professional discipline case, the Court reversed for lack of proper notice, not for the burden of proof applied at the hearing. See *id.* at 551. The *Ruffalo* Court concluded that appellee had not been afforded due process because he was unaware of all the charges against him until after he had testified. See *id.* at 549-51.

While we disagree that a license suspension hearing approximates a criminal action for the purpose of establishing a burden of proof, we recognize that the appellee has a substantial interest in maintaining her license, and thus her livelihood. Here, the interest is

somewhat tempered by the fact that the Board has not permanently removed her ability to practice her chosen profession. See *Gandhi v. Medical Examining Bd.*, 483 N.W.2d 295, 299 (Wis. Ct. App. 1992) (noting possibility of relicensing as factor to consider in balancing respective interests). The State likewise has a substantial interest in regulating the nursing profession. As expressed by the statute itself, the purpose underlying governmental regulation of the nursing profession is safeguarding the "life and health of the people of this state." 26 V.S.A. § 1571. Since Vermont's APA governs nursing disciplinary actions, several procedural protections are afforded nurse licensees such as: notice of the charges; opportunity to present evidence and argument; compulsion of witnesses' testimony by subpoena; cross-examination of witnesses; modified evidentiary rules; and findings of fact based on the evidence and matters officially noticed. We conclude that these statutory procedures, together with the preponderance of evidence burden of proof placed on the State, afforded the constitutional process due to appellee. Where substantial interests exist on both sides, due process demands no more than an equal apportionment of the risk of error, which the preponderance standard accomplishes. See *In re Walton*, 676 P.2d 1078, 1085 (Alaska 1983); see also *Steadman v. Securities & Exch. Comm'n*, 450 U.S. 91, 102 (1981) (preponderance of evidence standard satisfied government's burden of proof in securities fraud action even though proceeding could result in permanently barring licensee from practicing profession); *Johnson v. Board of Governors of Registered Dentists*, 913 P.2d 1339, 1353 nn.1-2 (Okla. 1996) (Summers, J., dissenting) (vast majority of states have upheld preponderance standard for medical professionals; only four have struck it down on constitutional challenge).

To the extent that appellee seeks application of the higher civil standard on nonconstitutional grounds, we note that the only precedent for employing the higher standard in this state is in cases where the alleged conduct was at least ostensibly analogous to civil fraud. *Harrington*, 152 Vt. at 449, 566 A.2d at 990 (administrative penalty for intentional misrepresentation of amount of income earned while receiving unemployment compensation); *Garber*, 139 Vt. at 491, 431 A.2d at 472 (analogizing proof of recipient's wilfulness in overpayment of welfare benefits, manifested by failure to report unemployment benefits, to civil fraud situation). Here, the allegations concern misappropriation, not civil fraud. Consequently, under our case law on administrative adjudications, the Board appropriately applied the preponderance of the evidence standard.

## II.

We next address the argument that, by failing to object to the hearsay testimony of L. and M., appellee was precluded from raising a hearsay objection on appeal. Appellee claims she made a proper objection to the use of the hearsay statements, and the Board therefore erred in relying on hearsay statements to support suspension of her license. According to appellee, the comment regarding hearsay in the opening statement that "evidence as it will be presented to you today lacks a core piece of evidence; that is, the presence of L. and M.," put the Board on notice of appellee's objection to any third-party testimony involving these two declarants. We disagree.

Although agencies must generally follow the rules of evidence, Vermont's APA relaxes the rules of admissibility for agency proceedings, including nursing board disciplinary actions. See 3 V.S.A. § 810(1) (evidence not admissible under rules of evidence may be admitted if it is of type commonly relied on by reasonably prudent people in conduct of their affairs); 26 V.S.A. § 1582(b); *In re Central Vt. Pub. Serv. Corp.*, 141 Vt. 284, 292, 449 A.2d 904, 909 (1982). Moreover, even in proceedings that adhere strictly to the rules of evidence, a hearsay issue may not be raised for the first time on appeal absent preservation by specific, timely objection during the proceeding. See V.R.E. 103(a); *Lanphere v. Beede*, 141 Vt. 126, 129, 446 A.2d 340, 341 (1982).

Here, appellee did not specifically object to most of the testimony of the supervising nurse, the home-health care nurse, or the investigator. Indeed, the Board sustained the only hearsay objection that appellee did make in a timely manner. The State noted certain hearsay exceptions, such as excited utterance, in its opening statement to the Board. And, given the testimony concerning L. and M.'s unavailability, that is their physical inability to travel to the hearing, the State appeared prepared to tender offers of proof for admission of the testimony concerning L. and M.'s allegations. The Board might well have admitted most or all of the testimony over appellee's objection depending on the State's offer of proof to each objection. Appellee's failure to object, however, deprived the State of the opportunity to articulate an offer of proof and the Board of the opportunity to engage in any analysis or balancing. We conclude appellee did not make the required specific objection to preserve a hearsay challenge.

## III.

Finally, we turn to the question of whether the State presented sufficient evidence to sustain under the preponderance standard the Board's finding that appellee took two Percocet tablets from L. and M.'s apartment during the week of October 8, 1994. As explained above, the "burden of persuasion on factual issues before an administrative body is met by the usual civil case standard of a preponderance of evidence." *Muzzy*, 141 Vt. at 472, 449 A.2d at 974 (internal quotation omitted). "[I]f the conflicting evidence of the parties is of equal weight, or if the evidence of the [grievant] outweighs that of the [State], the evidence of the [State] does not preponderate." *Id.* at 472-73, 449 A.2d at 974 (citations omitted). In reviewing the Board's decision, we will not set aside its findings of fact unless they are clearly erroneous. See *In re McGrath*, 138 Vt. 77, 82, 411 A.2d 1362, 1365 (1980).

In this case, we find no evidence of clear error. The Board found credible the three witnesses that testified concerning L. and M.'s allegations. Appellee asserts insufficient evidence supports the finding because it is undermined by another of the Board's findings that, according to the State expert's definition of addiction, L. was himself addicted to the narcotic drug Propacet. Appellee therefore propounds the theory that L. concocted the misappropriation story and placed the blame on appellee in order to cover for himself when he requested a prescription refill prior to the regular renewal period. To the contrary, we conclude that the Board's inclusion of the finding regarding L.'s addiction demonstrates that the Board engaged in a fair assessment of the evidence, including findings that weighed both for and against its ultimate conclusions. Appellee discounts, however, the testimony of several witnesses concerning the reluctance with which M. initially reported her suspicion and the emotional and resultant physical difficulties L. and particularly M. experienced after the disclosure. Although appellee points to some potentially conflicting evidence, we conclude it is relatively insignificant compared to the other evidence and not enough to tip the scales in her favor. In light of the full evidence before the Board, we hold it properly found that the State's evidence preponderated. On balance the weight of evidence supports the Board's finding that appellee took two Percocet from L. and M.'s apartment.

*Reversed.*