663 So.2d 618 (1995)
THE FLORIDA BAR, Complainant,
v.
Diane S. SEGAL, Respondent.
No. 83352.
Supreme Court of Florida.
November 22, 1995.
*619 John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and Randi Klayman Lazarus, Bar Counsel, Miami, for Complainant.
Diane S. Segal, Miami, pro se.
PER CURIAM.
We have for review the reports of the referee recommending that Diane S. Segal be found guilty of misconduct and that she be allowed to voluntarily resign from The Florida Bar. We have jurisdiction. Art. V, § 15, Fla. Const.
The Bar filed a complaint charging Diane S. Segal with 1) knowingly making a false statement of material fact to a tribunal in violation of Rule Regulating The Florida Bar 4-3.3(a)(1) and 2) failing, in an ex parte proceeding, to inform the tribunal of all material facts known to the lawyer that would enable the tribunal to make an informed decision in violation of Rule Regulating The Florida Bar 4-3.3(d). The charges arose as a result of Segal's handling of her uncle's estate.
The referee recommended that Segal be found guilty of violating rule 4-3.3(a)(1) by knowingly and intentionally making a false statement or misrepresentation to the probate court when she prepared and submitted to the court a written petition for discharge. However, the referee recommended that Segal be found not guilty of the other charge.
In support of his recommendation of guilt, the referee made the following findings. Segal's uncle left a sizeable estate, naming his sister and Segal as income co-beneficiaries. The uncle named his lawyer-friend, who drafted the will, and Segal as co-personal representatives. Segal was in law school when many of the events leading to the alleged misconduct occurred. Segal was admitted to The Florida Bar in 1991 and has not worked as a lawyer on any matters other than her uncle's estate. Segal became unhappy with the co-personal representative's administration of her uncle's estate and, as beneficiary of the estate, requested that he be removed. The co-personal representative resisted and retained counsel. The controversy ended with the co-personal representative receiving fees of approximately $100,000, and his lawyers receiving $145,000 in fees, costs and expenses. Segal ultimately and reluctantly paid the co-personal representative and his attorneys from the estate.
However, before the monies were paid, Segal, personally and as an attorney, undertook to handle the closing of her uncle's estate. Segal "closed" the estate at a time when fees or other monies were actively contested and outstanding to the co-personal representative and his attorneys. As part of the probate procedure, the estate assets were being transferred to a trust created by the uncle's will.
In order to close out the estate, Segal prepared a written petition for discharge, dated February 19, 1992, wherein she advised the probate court that the estate was proper for closure, that all claims and debts were paid and disposed of, and that payment or provision was made for the payment of all expenses of administration. Segal stated therein that she was the only person having an interest in the proceedings. The attorneys for the co-personal representative were not mentioned in the petition for discharge nor was the claim of the former co-personal representative. Segal did not send notice of the petition to the former co-personal representative or his attorneys.
*620 The referee considered and rejected each of Segal's defenses finding them to be an afterthought or rationalization for her conduct. The referee found that Segal was fully aware of the import of her conduct and that she was intentionally blind to simple probate law, procedure, and practice. And, when a third judge was assigned (after Segal sought the recusal of the first two), she sought to purge her recriminatory conduct by having the third judge sign two "unusual orders," the main purpose of which was to absolve Segal from any wrongdoing.
The referee concluded that Segal "knowingly and with conscious awareness of the nature of her conduct which was designed to accomplish a particular result, intentionally made a false statement or misrepresentation" to the probate court when she prepared and submitted the written petition for discharge. On October 27, 1994, the referee issued his report on guilt but postponed recommending sanctions until a sanctions hearing could be held.
On November 3, 1994, prior to the hearing on sanctions, Segal filed a letter with Sid J. White, the Clerk of this Court, advising him that she was "resigning from The Florida Bar" effective on that date. Mr. White advised Segal, by letter dated November 8, 1994, that her resignation must comply with Rule Regulating The Florida Bar 3-7.12. Segal responded by letter dated November 10, 1994, insisting that she had resigned effective November 3 and therefore rule 3-7.12 "is NOT APPLICABLE" to her.
On December 13, 1994, Segal filed a petition for writ of prohibition in this Court seeking to prohibit the referee from proceeding with a hearing on sanctions. Segal maintained that in light of her November 3 resignation the referee no longer had jurisdiction over her. The petition was denied February 6, 1995. Segal then filed a petition for writ of certiorari in the United States Supreme Court. That petition was denied October 2, 1995.
On June 19, 1995, a hearing was held on sanctions. At that time, the Bar recommended that Segal be suspended for two years with the condition that she retake the Florida Bar Examination and that she obtain a psychiatric evaluation prior to petitioning for reinstatement. Segal continued to maintain that she had resigned November 3, 1994.
The referee found that Segal's conduct and the papers submitted to him were "bizarre, irrational, irrelevant, irreverent, unjustified, legally insufficient, duplicative and vicious toward those who have come in contact with her and who have opinions differing from hers." Although the Bar urged the referee to consider Segal's conduct during the disciplinary proceedings in aggravation, the referee considered the conduct "only as to [Segal's] fitness to practice law." The referee went on to find that the sanctions phase of the proceedings "has conclusively shown that [Segal] should not be accorded or permitted the right or privilege to practice law." She "has time and again attempted to resign from the legal profession, and The Florida Bar wants her suspended." The referee then recommended that Segal be permitted to resign from the Bar and that the Bar be directed to accept her resignation effective July 31, 1995. He further recommended that Segal be prohibited from applying for readmission for a period of two years from August 1, 1995, and that if she seeks readmission she be required to take the bar examination and be evaluated by a psychiatrist.
The trial court awarded the Bar costs incurred until "November 30, 1994 (i.e. at about her `resignation' time)"; after that time each party was ordered to bear its own costs.
Segal seeks review of the referee's reports. She challenges the referee's findings and recommendations and maintains that she cannot be disciplined by this Court because she has voluntarily resigned from The Florida Bar. The Bar filed a cross-petition seeking disbarment and costs for all proceedings.
Our review of the record reveals competent, substantial evidence to support the referee's findings as outlined above. Where there is record support for a referee's findings, we will not reweigh the evidence or substitute our judgment for that of the referee. Florida Bar v. Garland, 651 So.2d 1182, 1184 (Fla. 1995). The findings of fact support the referee's recommendation that Segal be *621 found guilty of violating rule 4-3.3(a)(1). Therefore, we approve the referee's findings and recommendation as to guilt.
We reject Segal's contention that disciplinary proceedings could not proceed against her after November 3, 1994, the date she attempted to voluntarily resign from the Bar. The Bar is correct that Segal's "resignation" was a nullity because there is no provision for such a "voluntarily resignation" in The Rules Regulating The Florida Bar. The only resignation available to an attorney faced with allegations of a disciplinary violation is a "disciplinary resignation" under rule 3-7.12. See also R.Regulating Fla.Bar 3-5.1(j).
Segal refused to comply with rule 3-7.12, in part, because she believed that the rule required her to "admit guilt" in order to resign. However, there is no such requirement under rule 3-7.12.[1] Under subdivision (a) of the rule, an attorney who wishes to resign membership in the wake of disciplinary proceedings must file a "petition for disciplinary resignation" with this Court. The petition must contain a statement of all past and pending disciplinary actions and criminal proceedings and describe the charges made or under investigation, results of past proceedings, and the status of pending investigations and proceedings. The only "admission" that an attorney must make concerning pending charges is to acknowledge that an investigation or disciplinary proceeding is pending and to describe the nature of the charges and the status of the proceedings.
By accepting membership in The Florida Bar, Segal subjected herself to the jurisdiction of this Court and its agencies as well as to the Rules Regulating The Florida Bar. Art. V, § 15, Fla. Const.; R.Regulating Fla.Bar 3-7.11(c). She cannot simply opt out in the wake of disciplinary charges. As a member of The Florida Bar, Segal does not have a constitutional right to terminate her membership in a manner other than that authorized by this Court. As the Bar notes, if we were to allow Segal to resign outside the disciplinary process, there is nothing to prevent her from applying for admission in another jurisdiction and maintaining that she has never been disciplined for professional misconduct. Moreover, adherence to the procedures outlined in rule 3-7.12 ensures *622 that "the public interest will not be adversely affected by [the resignation] and that such will neither adversely affect the integrity of the courts nor hinder the administration of justice nor the confidence of the public in the legal profession." R.Regulating Fla.Bar 3-7.12(b).
The Bar is also correct that the referee had no authority to recommend that Segal's "voluntary resignation" be accepted. Resignation outside the provisions of rule 3-7.12 is not a "disciplinary measure" authorized by this Court. See R.Regulating Fla. Bar 3-5.1. Therefore, we reject the recommended sanction.
We have considered the Bar's position that disbarment is called for here. However, under the circumstances, we believe a three-year suspension, with the conditions outlined below, is more appropriate. Making a knowing misrepresentation to a tribunal is a serious ethical breach. Florida Bar v. Kleinfeld, 648 So.2d 698 (Fla. 1994); Fla.Stds.Imposing Law.Sancs. 6.11. However, this was an isolated instance of misconduct that occurred in a matter in which Segal was personally involved. It also appears that Segal's inexperience in the practice of law may have exacerbated the situation. While a lesser suspension might otherwise be proper,[2] in light of Segal's conduct during these proceedings, including her refusal to acknowledge the wrongful nature of her conduct and to comply with The Rules Regulating The Florida Bar, we believe a three-year suspension, as outlined below, is warranted.
We turn now to the referee's refusal to award the Bar costs incurred after Segal's attempted resignation. Absent an abuse of discretion, we will uphold a referee's award of costs in a disciplinary proceeding. R.Regulating Fla.Bar 3-7.6(o)(2). However, we find an abuse of discretion here. The referee refused to award the Bar costs incurred after November 30, 1994, apparently because the Bar "refused to accept" Segal's voluntary resignation. The Bar cannot be faulted for failing to accept Segal's resignation because the Bar clearly did not have authority to do so. As we explained above, resignation in the manner attempted by Segal is not authorized by this Court and therefore is a nullity. Because the Bar had no choice but to proceed to a hearing on sanctions, the referee abused his discretion by refusing to award the Bar costs incurred in connection with those proceedings.
Accordingly, Diane S. Segal is hereby suspended from the practice of law for three years. Segal shall accept no new business from the date of this opinion until such time as she is reinstated. As a condition of her reinstatement, Segal must prove rehabilitation and successfully complete the ethics portion of the Florida Bar Examination. R.Regulating Fla.Bar 3-5.1(e). If Segal seeks reinstatement, she also must undergo psychiatric evaluation, the results of which must demonstrate that she is mentally fit to practice law. The suspension shall be effective thirty days from the date of this opinion, so that Segal can close out her practice and protect the interests of any existing clients. If Segal notifies this Court in writing that she is not practicing and does not need the thirty days to protect her clients, an order will be entered making the suspension effective immediately. Judgment is entered against Segal for costs in the amount of $2,684.59, for which sum let execution issue.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] Rule Regulating The Florida Bar 3-7.12 provides:

If a disciplinary agency is investigating the conduct of an attorney, or if such an agency has recommended probable cause, then disciplinary proceedings shall be deemed to be pending and a petition for disciplinary resignation may be filed pursuant to this rule. An attorney may seek disciplinary resignation from The Florida Bar during the progress of disciplinary proceedings in the following manner:
(a) Petition for Disciplinary Resignation. The petition for disciplinary resignation shall be styled "The Florida Bar v. (respondent's name)," titled "Petition for Disciplinary Resignation," filed with the Supreme Court of Florida and contain a statement of all past and pending disciplinary actions and criminal proceedings against the petitioner. Such statement shall describe the charges made or those under investigation for professional misconduct, results of past proceedings, and the status of pending investigations and proceedings. The petition shall state whether it is with or without leave to reapply for readmission to the bar. A copy of the petition shall be served upon the executive director of The Florida Bar.
(b) Judgment. Within 60 days after filing and service of the petition, The Florida Bar may file with the Supreme Court of Florida its response to the petition either supporting or opposing the petition for disciplinary resignation. A copy of the response shall be served upon the petitioner. The Supreme Court of Florida shall consider the petition, any response thereto, and the charges against the petitioner. If it has been shown by the petitioner in a proper and competent manner that the public interest will not be adversely affected by the granting of the petition and that such will neither adversely affect the integrity of the courts nor hinder the administration of justice nor the confidence of the public in the legal profession, the Supreme Court of Florida shall enter an appropriate judgment granting disciplinary resignation; otherwise, the petition shall be denied. If the judgment grants the disciplinary resignation, the judgment may require that the disciplinary resignation be subject to appropriate conditions.
(c) Delay of Disciplinary Proceedings. The filing of a petition for disciplinary resignation shall not stay the progress of the disciplinary proceedings without the approval of the board or, if a referee has been appointed and evidence has been taken, then without the approval of the referee.
(d) Dismissal of Pending Disciplinary Cases. If disciplinary resignation is accepted under this rule, such disciplinary resignation shall serve to dismiss all pending disciplinary cases.
[2] See Florida Bar v. Burkich-Burrell, 659 So.2d 1082 (Fla. 1995) (attorney who knowingly assisted husband/client in making false statement in interrogatories given thirty-day suspension); Florida Bar v. Anderson, 538 So.2d 852 (Fla. 1989) (attorney who failed to correct brief that misrepresented facts of case to court given thirty-day suspension).