### Robert Perry, M.D. v. Medical Practice Board

[737 A.2d 900]

No. 98-270

Present: **Dooley, Morse, Johnson and Skoglund, JJ., and Gibson, J. (Ret.),** Specially Assigned

Opinion Filed July 16, 1999

*Ritchie E. Berger* and *Shapleigh Smith, Jr.* of *Dinse, Knapp & McAndrew, P.C.*, Burlington, for Plaintiff-Appellant.

*William H. Sorrell*, Attorney General, and *James S. Arisman*, Special Assistant Attorney General, Montpelier, and *Geoffrey A. Yudien*, Assistant Attorney General, Waterbury, for Defendant-Appellee.

**Skoglund, J.** Robert Perry appeals from a superior court judgment upholding the authority of the Board of Medical Practice to deny Perry's motion to withdraw his medical-license application. Perry contends that: (1) his appeal of the Board's decision was timely; and (2) the court misconstrued the Board's statutory authority. We affirm.

## FACTS

The material facts are undisputed. In August 1993, following his graduation from the University of Vermont Medical School, Perry applied to the Board for a medical license. The application was held in

abeyance until Perry completed his first year of postgraduate medical training, as required for license eligibility. In June 1994, Perry notified the Board that he was prepared to have it review his application. In May 1995, Perry sent a letter to the Board requesting to withdraw his application because he had moved out of state and no longer wished to practice in Vermont. The Board denied the request, as well as a follow-up request sent by Perry's attorney. Thereafter, the Board continued the investigation it had begun, focusing on certain apparent misrepresentations in Perry's application. In December 1995, Perry submitted a formal motion to dismiss, arguing that the Board lacked the statutory authority to deny his withdrawal request. The following January, the Board issued a written decision denying the motion, and also preliminarily denying the license application subject to further review at Perry's request. Perry subsequently appealed the preliminary denial of his license application, which remains pending.

In response to the Board's decision, Perry filed appeals of the Board's interlocutory ruling denying his withdrawal request with both this Court and the Washington Superior Court. On April 2, 1996, this Court granted the State's motion to dismiss, ruling that interlocutory appeals from Board decisions were subject to the requirements of 3 V.S.A. § 130a, which establishes a procedure for appeals from Board decisions to an administistative appellate officer, followed by an appeal to the Washington Superior Court. See *In re Perry*, No. 96-038 (Vt. Apr. 2, 1996) (mem.). Perry thereupon pursued an administrative appeal, and the State moved to dismiss on the ground that it was untimely. Following a hearing, the appellate officer denied the State's motion to dismiss, and granted Perry's motion to withdraw his application, ruling that the Board lacked either express or implied statutory authority to deny the request. The State appealed. In a written opinion, the superior court affirmed the appellate officer's conclusion that Perry's appeal was timely, but reversed the officer's decision concerning the Board's statutory authority. The court ruled that the Board's authority to deny the request was "simply a logical extension" of its express power to deny an application in the first instance, and therefore within the scope of its statutory mandate. This appeal followed.

## DISCUSSION

We address two procedural issues at the threshold. First, although not raised by either of the parties, we note that the

judgment remains interlocutory in nature, and that none of the procedures for perfecting an interlocutory appeal was followed in this case. See V.R.A.P. 5, 5.1. Nevertheless, the court's ruling resolves an important issue separate from the merits, a dismissal of the appeal would most likely result in another appeal after final judgment, the merits have been fully briefed, and the Court has reviewed the case. Therefore, we exercise our discretion to suspend the rules and reach the merits. See *Huddleston v. University of Vermont*, 168 Vt. 249, 252, 719 A.2d 415, 417 (1998); V.R.A.P. 2.

The State initially contends that Perry failed to file a timely notice of appeal from the Board's decision. As noted, Perry attempted to appeal from the Board's decision of January 3, 1996, by filing notices of appeal on January 12, 1996 with both the superior court and the Supreme Court. Copies of the notice of appeal were served on the executive director of the Board. Following this Court's dismissal, Perry appealed to the Director of the Office of Professional Regulation, who assigned the case to an appellate officer pursuant to 3 V.S.A. § 130a(a), which provides: "A party aggrieved by a final decision of a board may, within 30 days of the decision, appeal that decision by filing a notice of appeal with the director who shall assign the case to an appellate officer."

Because of his mistaken appeal to this Court, Perry failed to file an appeal with the director until May 28, 1996, well beyond the thirty-day filing requirement of § 130a(a). Accordingly, the State requested that the administrative appeal be dismissed as untimely. The appellate officer denied the request. The superior court affirmed that portion of the appellate officer's ruling. The State renews the argument here.

Perry responds that the State's failure to raise the timeliness issue by cross-appeal divests this Court of jurisdiction to consider the claim. See *Union Bank v. Jones*, 138 Vt. 115, 125, 411 A.2d 1338, 1344 (1980) (appellee seeking to challenge aspects of trial court decision must file timely cross-appeal). The State counters that the cross-appeal requirement does not apply because it was "content with the final order below, leaving it nothing to appeal." *Huddleston*, 168 Vt. at 255, 719 A.2d at 419. The State may or may not be "content" with a ruling on the merits, but by raising the timeliness argument it is seeking a dismissal of the appeal on the jurisdictional ground that it was untimely under 3 V.S.A. § 130a(a), and not an affirmance of the decision below. Indeed, the State is vigorously contesting the merits of the superior court's jurisdictional ruling. Accordingly, the State

must cross-appeal to seek this relief, and we are without jurisdiction to reach the merits of the State's argument. See *Huddleston*, 168 Vt. at 255-56, 719 A.2d at 419-20.*

■ We turn to the merits of Perry's claim that the Board lacked the power to deny his withdrawal motion. The rule that we have repeatedly reaffirmed is that the Board, as an administrative body, "has only such powers as are expressly conferred upon it by the Legislature, together with such incidental powers expressly granted or necessarily implied as are necessary to the full exercise of those granted." *Trybulski v. Bellows Falls Hydro-Elec. Corp.*, 112 Vt. 1, 7, 20 A.2d 117, 120 (1941); accord *In re Professional Nurses Serv.*, 164 Vt. 529, 534, 671 A.2d 1289, 1293 (1996); *In re Club 107*, 152 Vt. 320, 323, 566 A.2d 966, 967 (1989). Thus, while we generally defer to interpretations of enabling legislation by an administrative agency, see *Professional Nurses*, 164 Vt. at 535, 671 A.2d at 1293, the agency's regulations must still be reasonably related to the legislation to withstand judicial scrutiny. See *Club 107*, 152 Vt. at 323, 566 A.2d at 967-68.

The Board is broadly empowered to investigate and adjudicate charges of unprofessional conduct by licensees, 26 V.S.A. §§ 1353(a)(2), 1360, impose disciplinary sanctions, *id.* § 1361, issue licenses, *id.* § 1391, and suspend, revoke or refuse to issue licenses for "false or fraudulent representations" or "immoral, unprofessional or dishonorable conduct." *Id.* § 1398; see also *Delozier v. State*, 160 Vt. 426, 431-32, 631 A.2d 228, 231 (1993) (although not expressly conferred, Board has implicit authority to revoke license for immoral or dishonorable conduct). The Legislature has declared that the regulation of professions and occupations is "for the purpose of protecting the public." 26 V.S.A. § 3101. Indeed, the licensing of the professions, and of physicians in particular, has long been recognized as falling within a state's broad police powers for the protection of the general welfare. In an early due process decision the United States Supreme Court explained the state's interest in this area as follows:

Few professions require more careful preparation by one who seeks to enter it than that of medicine. . . . Every one

---

* In view of our holding, we need not reach Perry's alternative arguments that 3 V.S.A. § 130a(a) applies only to final decisions of the Board, but see *In re Delozier*, 158 Vt. 655, 655, 613 A.2d 196, 196 (1992) (mem.) (interlocutory appeals from decisions of Board must follow procedures set forth for final judgments), and that the mistaken appeal to superior court was sufficient to preserve his appeal from the Board's decision.

> may have occasion to consult [the physician], but comparatively few can judge of the qualifications of learning and skill which he possesses. Reliance must be placed upon the assurance given by his license, issued by an authority competent to judge in that respect, that he possesses the requisite qualifications. Due consideration, therefore, for the protection of society may well induce the State to exclude from practice those who have not such a license, or who are found upon examination not to be fully qualified.

*Dent v. West Virginia*, 129 U.S. 114, 122-23 (1889); see also *Rosenblatt v. California State Bd. of Pharmacy*, 158 P.2d 199, 203 (Cal. Ct. App. 1945) (affirming legislature's authority to enact regulations to protect citizens from consequences of unfitness or incompetence in health profession); *Commonwealth v. Zimmerman*, 108 N.E. 893, 895 (Mass. 1915) (holding that public health was of "such vital importance" that any rational licensing scheme to assure education, training and skill of physicians would be upheld).

Viewed in the light of this compelling state interest, we have no doubt that the statutory authority to issue or deny a medical license necessarily implies the discretionary authority to deny leave to withdraw a license application. It is well settled that a *licensee* may not evade disciplinary action merely by resigning or allowing a license to expire. See, e.g., *In re Lassen*, 672 A.2d 988, 1000 (Del. 1996); *Davidson v. District of Columbia Bd. of Med.*, 562 A.2d 109, 114 (D.C. 1989); *Florida Bar v. Segal*, 663 So. 2d 618, 621 (Fla. 1995); *In re Atkins*, 320 S.E.2d 146, 146 (Ga. 1984); *Office of Disciplinary Counsel v. Herrmann*, 381 A.2d 138, 140 (Pa. 1977). Otherwise, the licensee could apply for admission in another jurisdiction, or subsequently reapply in the same jurisdiction, and maintain that he or she has never been disciplined for professional misconduct. This would patently defeat the underlying purposes of the regulatory scheme to protect the public and maintain the integrity of the profession. See *Segal*, 663 So. 2d at 621; *Davidson*, 562 A.2d at 114.

The state's interest is no less urgent in the case of an *applicant* for a license. The Board's authority to investigate an applicant's background and qualifications is every bit as broad as its authority to investigate a licensee. See 26 V.S.A. § 1353(a)(10) (Board may require licensee or applicant to submit to mental or physical examination, and evaluation of medical knowledge and skill). Where that investigation discloses substantial grounds for denial on the basis of false or fraudulent representations or immoral or dishonorable

conduct, the safety of the public and the integrity of the profession may — in the Board's discretion — be better served by issuing a formal ruling, so that a decision of record would be available in this or any other jurisdiction where the applicant might subsequently apply. Allowing an applicant to avoid scrutiny of his or her background, training, experience, and morals by simply withdrawing the application at his or her convenience would ill serve the interest of public safety in this state and the other state licensing jurisdictions.

Although Perry denigrates the interstate component of licensing, the statutes make clear that it is integral to the regulatory scheme. The Board is broadly empowered to suspend or otherwise discipline any practitioner upon notice that he or she has failed to renew, surrendered, or otherwise terminated his or her license in another jurisdiction during or prior to disciplinary proceedings in that jurisdiction. See 26 V.S.A. § 1366(b). The Board is further empowered to refuse to issue a license to applicants "who, by false or fraudulent representations, have obtained or sought to obtain practice in their profession." *Id.* § 1398. This provision plainly encompasses applicants who are on record as having been denied licenses in *other* jurisdictions. Thus, the authority to continue an investigation to completion and, where necessary, deny an application for failure to satisfy the licensing requirements of § 1398, represents an integral and necessary component of the Board's reciprocal duties vis a vis the other licensing jurisdictions. Accordingly, we conclude that the Board's discretion to deny a request for withdrawal of an application falls well within the necessary and implied powers of its express statutory mandate. See *Professional Nurses*, 164 Vt. at 534, 671 A.2d at 1293.

Perry asserts, nevertheless, that this conclusion is undermined by the Legislature's enactment, subsequent to the Board's decision, of an amendment to 3 V.S.A. § 129, providing that a professional conduct board may refuse to accept the return of a license, or the withdrawal of an application for a license, by one who is subject to a disciplinary investigation. See *id.* § 129(a)(9); 1997, No. 40, § 4. Perry cites the standard canon of statutory construction that "an amendment of [a] statute shows a legislative intent to change the effect of existing law." *Montgomery v. Brinver Corp.*, 142 Vt. 461, 464, 457 A.2d 644, 646 (1983). The fact that the Legislature amended the statute to include the power to deny a request for withdrawal demonstrates, he argues, that such power had been previously lacking.

■ The fundamental objective of statutory interpretation is to discern and implement the legislative intent, see *In re Wal\*Mart Stores, Inc.*, 167 Vt. 75, 84, 702 A.2d 397, 403 (1997), and in seeking that intent we look to the words of the statute itself, the legislative history and circumstances surrounding its enactment, and the legislative policy it was designed to implement. See *Merkel v. Nationwide Ins. Co.*, 166 Vt. 311, 314, 693 A.2d 706, 707-08 (1997). Thus, the canon of construction on which Perry relies routinely yields to the corollary principle that contrary evidence may reveal a legislative intent to clarify rather than change existing law. See 1A N. Singer, Sutherland Statutory Construction § 22.30, at 267-68 (5th ed. 1993); *In re Smith*, 169 Vt. 162, 170, 730 A.2d 605, 611 (1999); *Town of Cambridge v. Town of Underhill*, 124 Vt. 237, 241, 204 A.2d 155, 158 (1964). To determine whether a statutory amendment was intended as clarifying legislation, we look to the history and circumstances surrounding its enactment. See 1A Sutherland, *supra*, § 22.30, at 267; *Smith*, 169 Vt. at 170, 730 A.2d at 611; *Town of Cambridge*, 124 Vt. at 241, 204 A.2d at 158.

As we explained recently in *Smith*, 169 Vt. at 170-71, 730 A.2d at 611-12, the amendment at issue here was part of a larger, omnibus bill revising and standardizing the procedures that govern the regulation of thirty-four separate occupations and professions. See 1997, No. 40. ("An Act Relating to Efficiency in the Regulation of Professions and Occupations"). Prior to the Act, the Board's policy since at least 1991 had been to disallow requests to withdraw medical-license applications. In 1993, the Board amended its policy to allow the withdrawal of an application, upon petition, if certain criteria were satisfied. The policy was revised again, and reaffirmed, in 1995. In denying Perry's motion in this case, the Board noted its longstanding policy of not permitting withdrawals except in certain limited circumstances not here applicable.

■ The appellate officer's decision to reverse the Board on the ground that it lacked authority to deny Perry's motion represented a departure from this policy, and it was followed within several months by a request from the Office of Professional Regulation for legislation containing the amendment that reinstated the former policy. A contemporaneous memorandum from the Director of the Office of Professional Regulation described the amendment in question as a "provision to *clarify* that boards do not have to return applications or licenses when a disciplinary investigation is in process." (Emphasis added.) These circumstances strongly support an inference that the

amendment was intended to clarify the meaning and scope of the Board's regulatory authority, not to change it. See *Town of Cambridge*, 124 Vt. at 241, 204 A.2d at 158.

Accordingly, we conclude that the trial court's judgment was sound.

*Affirmed.*