In Re: Appeal of DaSilva, No. 819-12-02 Wncv (Teachout, J., Aug. 29, 2003)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
WASHINGTON COUNTY, SS.

|  |  |  |
|---|---|---|
| In re: Appeal of | ) | Washington Superior Court |
| NIGEL DASILVA | ) | Docket No. 819-12-02 Wncv |
|  | ) |  |

Opinion and Order

Pursuant to 3 V.S.A. § 130a(c), Dr. Nigel DaSilva appeals from the decision of an Office of Professional Regulation (OPR) appellate officer upholding a reprimand issued by the Board of Osteopathic Physicians and Surgeons (the Board). Dr. DaSilva is represented by Ronald A. Shems, Esq. The State is represented by William H. Ahlers, Esq. Oral argument was held on May 28, 2003. For the following reasons, the decision of the Board is vacated.

Appellant does not challenge the Board's findings, which may be summarized as follows. In 1981, the Board issued to Dr. DaSilva a license to practice in Vermont as an osteopathic physician. Dr. DaSilva never practiced in Vermont and the Vermont license eventually lapsed in 1994. Between 1981 and 1983, Dr. DaSilva practiced in Arizona. While there, three medical malpractice suits named him as a defendant and he received one "letter of concern" from the Arizona Board of Osteopathic Examiners in Medicine and Surgery. Other than Vermont and Arizona, over time Dr. DaSilva has been licensed in Alaska, California, Illinois, Nevada, New Mexico, and Texas. He currently practices in Texas and has no plans to ever practice in Vermont.

In 1999, while applying for a license to practice in Alaska, Dr. DaSilva responded falsely to two questions which, if answered truthfully, would have revealed the Arizona letter of concern and the three Arizona law suits. In 2000, the Alaska State Medical Board fined and reprimanded Dr. DaSilva for this incident.

In a July 30, 2001 Amended Specification of Charges, the State of Vermont sought the revocation or suspension of Dr. DaSilva's Vermont license, or other discipline, as a result of the Alaska incident. In an October 17, 2001 decision, the Board reprimanded Dr. DaSilva for supplying false answers on the Alaska application. Dr. DaSilva appealed to an OPR appellate officer arguing (as he did to the Board) that the Board lacked jurisdiction to reprimand him because his license had lapsed long before the Alaska application incident. The appellate officer

agreed with the Board that it has authority to reprimand a previous licensee in these circumstances pursuant to 3 V.S.A. § 129(a)(6), and upheld the reprimand. Dr. DaSilva then filed this appeal, substantially renewing the arguments made to the hearing officer and the Board.

The only issue on appeal is whether the Board had legal authority to discipline Dr. DaSilva. The Board "has only such powers as are expressly conferred upon it by the Legislature, together with such incidental powers expressly granted or necessarily implied as are necessary to the full exercise of those powers." Perry v. Medical Practice Bd., 169 Vt. 399, 403 (1999) (quoting Trybulski v. Bellows Falls Hydro-Elec. Corp., 112 Vt. 1, 7 (1941)). "An agency must operate for the purposes and within the bounds authorized by its enabling legislation, or this Court will intervene. Where it exercises its adjudicative function we will be especially vigilant, since proper utilization of the judicial process is unrelated to expertise in any particular subject matter. Although findings of fact of an administrative agency will not be set aside unless clearly erroneous, conclusions of law are not so protected." In re Agency of Admin., State Bldg. Div., 141 Vt. 68, 75 (1982) (citations omitted), cited in In re Vermont Verde Antique Intl., 13 V.L.W. 231, 232 (2002). An administrative board's interpretation of a statute will be entitled to deference when it represents a permissible construction of that statute, and one that is consistent with statutory purpose. OPR v. McElroy, 2003 VT 31, ¶7 (March 27, 2003).

Dr. DaSilva argues that no Vermont statute authorizes disciplinary action against an osteopath who no longer possesses a Vermont license and who exhibits no intent to practice in Vermont for unprofessional conduct occurring wholly out of state entirely after the expiration of the Vermont license, as in this case. The State argues that Dr. DaSilva's interpretation of applicable statutes "would take a leap of faith to construe these provisions so narrowly and restrictively."

The court agrees with Dr. DaSilva that no applicable statute explicitly or implicitly authorizes the Board to take disciplinary action in the circumstances of this case. Chapter 33 of Title 26 establishes the Board and its licensing, supervisory, and disciplinary authority over Vermont osteopathic physicians. The scope of the Board's disciplinary authority is set out primarily in 26 V.S.A. § 1843(a) as follows: ". . . the board may take disciplinary action [for unprofessional conduct defined in §1842] against an osteopathic physician or applicant."

Dr. DaSilva is not now an "osteopathic physician" subject to § 1842, as an osteopathic physician "means a person licensed under this chapter to practice osteopathic medicine." 26 V.S.A. § 1750(9). Dr. DaSilva at one time was licensed under Chapter 33, but his license lapsed in 1994, and he was not licensed in Vermont at anytime relevant to this case. According to the rules promulgated by the Board, a license must be renewed prior to expiration at the end of every two year period, or the license lapses. Rules 2.3.1 and 2.3.2. A physician with a license which is lapsed may be reinstated without actually reapplying by complying with certain requirements in Rule 2.3.2. Reinstatement after a lapse exceeding one year is subject to "full" application:

> If a license is lapsed more than one year, the osteopathic physician must complete a reinstatement application in full and pay the application fee. A reinstatement application provides information on the osteopathic physician's professional

2

activities in any other jurisdiction during the period the license has lapsed, including a letter from the chief of staff of each hospital where the physician has privileges, a license verification from each state where the physician holds an active license, and appearing for a personal interview. Reinstatement may be denied for good cause.

Rule 2.3.2. Dr. DaSilva is not "licensed . . . to practice." 26 V.S.A. § 1750(9). He may not practice in Vermont. His license is long expired, and so long lapsed that he would be required to become a new applicant to attempt to become licensed.

Neither is Dr. DaSilva an "applicant" under 26 V.S.A. § 1842. "Applicant" is not explicitly defined, but is used in the statutes and Board rules exclusively to refer to one currently engaged in the process of applying for a license. Dr. DaSilva is not currently applying for a license and maintains that he has no intention of ever applying in Vermont. Acknowledging, as the State urges, that Dr. DaSilva could, despite his representations, at some point in the future become an applicant, nevertheless, he is not now an applicant.

In addition to the authority set forth in Chapter 33 of Title 26, which relates specifically to Osteopathy, the Board has additional disciplinary authority, applicable to Professional Regulation generally, under Title 3, Chapter 5, Subchapter 3. Of particular pertinence to this case is 3 V.S.A. § 129(a), which provides as follows:

In addition to any other provisions of law, a board may exercise the following powers:

* * *

(6) Discipline any licensee or refuse to license any person who has had a license revoked, suspended, limited, conditioned, or otherwise disciplined by a licensing agency in another jurisdiction for an offense which would constitute unprofessional conduct in this state, or has surrendered a license while under investigation for unprofessional conduct.

3 V.S.A. § 129(a). This subsection authorizes boards to act in relation to two classes of persons: (1) licensees, who may be disciplined by a board, and (2) non-licensees, who may be refused a license by a board. The question presented by this case is whether the Board of Osteopathic Physicians and Surgeons may discipline a person who is neither a licensee nor a person seeking a license. A licensee means "registrants and holders of certificates or permits issued by a board or the director." Under 3 V.S.A. § 121, this means a Vermont board, not an out-of-state board or licensing body. Dr. DaSilva is not a registrant or holder of a Vermont license, so he is not a licensee under 3 V.S.A. § 129(a). Neither is he a non-licensee who may be refused a license, as he has not applied for one. What is significant about this general provision in Title 3 is that it

3

does not confer upon the Board an authority that is any broader than that specified in Title 26. As the review of Title 26 has shown, the scope of the Board's authority to discipline is "to take disciplinary action against an osteopathic physician or applicant." 26 V.S.A. §1843.

Further clarification of the scope of the authority conferred under Title 3 is found in 3 V.S.A. §129a(a), which defines "Unprofessional conduct," and provides:

In addition to any other provision of law, the following conduct by a licensee constitutes unprofessional conduct. When that conduct is by an applicant or person who later becomes an applicant, it may constitute grounds for denial of a license or other disciplinary action. Any one of the following items, or any combination of items, whether or not the conduct at issue was committed within or outside the state, shall constitute unprofessional conduct:

(1) Fraudulent or deceptive procurement or use of a license.

* * *

(3) Failing to comply with provisions of federal or state statutes or rules governing the practice of the profession.

3 V.S.A. § 129a(a). Subsection (a) applies to licensees, applicants whose misconduct occurred during application, and applicants whose misconduct occurred prior to application. Nothing in § 129a authorizes disciplinary action against one who is neither a licensee nor an applicant. Denial of a license and disciplinary action are authorized at such time as a person becomes an applicant, but not before.

None of the above statutes, or any others, authorize the Board's disciplinary action in this case. The action of the Board was outside the scope of its statutory authority.

Without parsing any of these statutes, the State offers several reasons why the Board should have authority to discipline Dr. DaSilva.

The State argues that the interpretation of these statutes adopted by the court impedes the Board's statutory duty "to fulfill the public's right to know of any action taken against a licensee when that action is based on a determination of unprofessional conduct," relying on 3 V.S.A. § 131(a). This section sets out specifically what information relating to disciplinary matters is accessible to the public and which remains confidential. The State apparently contends that it must discipline Dr. DaSilva now, even though he is not a licensee or applicant, so that it will have a record in the event Dr. DaSilva ever applies in Vermont, and in order to make Dr. DaSilva's unprofessional conduct in Alaska publicly known. This is an overly broad interpretation of the statute. Creating a public record of disciplinary actions against professionals in other states who have no present involvement with Vermont is beyond the reasonable purpose

4

and scope of V.S.A. § 131(a).

In a related argument, the State implies that failing to discipline Dr. DaSilva would mislead members of the public or others by requiring the OPR manager to respond "no" to any question about whether DeSilva has been disciplined in Vermont. That answer, of course, would not be misleading unless the question presumed that if Dr. DaSilva was disciplined anywhere at anytime, then he would also have been disciplined in Vermont. The court finds that a highly unlikely presumption to attribute to potential inquirers. As a rationale itself for disciplinary action, its breadth is not supported by statutory language and is sweepingly overbroad in relation to statutory purpose: the same rationale would apply to all osteopathic physicians in all states who have ever been disciplined, regardless of any licensure in Vermont, merely because someone might inquire about discipline in Vermont.

Third, the State argues that if it does not discipline Dr. DaSilva now, it will be collaterally estopped from doing so at the time of any future application for a Vermont license. This fear is unfounded. As discussed above, the Board has ample authority to deal with the Alaska misconduct at the time of any future application.

The State also argues that the court should defer to the Board's interpretation of the statutes because they are silent or ambiguous with respect to a person with Dr. DaSilva's status. The State has not cited any specific ambiguity and neither the Board nor the hearing officer found the statutes silent or ambiguous. The need to interpret a statute in the light of presenting facts does not by itself create ambiguity. It simply calls for the court to engage in statutory interpretation, which is its traditional function. The court defers to agency interpretation only where it is a permissible construction and consistent with statutory purpose. Id.

Finally, the State argues that the Board must discipline Dr. DaSilva to prevent him from simply timing his license applications and expirations in multiple states to obviate any discipline anywhere for misconduct. This reflects a legitimate concern to the extent that there is or was an application pending in Vermont. This issue was dealt with extensively in Perry v. Medical Practice Bd., 169 Vt. 399 (1999). In Perry, a board sought to prevent a license applicant under investigation from withdrawing the application to evade the continuation of the investigation. The Perry Court stated:

> It is well settled that a *licensee* may not evade disciplinary action merely by resigning or allowing a license to expire. Otherwise, the licensee could apply for admission in another jurisdiction, or subsequently reapply in the same jurisdiction, and maintain that he or she has never been disciplined for professional misconduct. This would patently defeat the underlying purpose of the regulatory scheme to protect the public and maintain the integrity of the profession.
>
> The state's interest is no less urgent in the case of an *applicant* for a

5

license.

Id. at 404 (citations omitted) (emphasis in original). The interest protected by Perry and the statutes discussed therein is in preventing an unscrupulous professional from hiding the fact of misconduct by evading the disciplinary process through withdrawing a pending application or surrendering a license. This interest simply is not at play in this case. Dr. DaSilva was investigated, fined, and reprimanded in Alaska and is neither an applicant nor a licensee in Vermont. 3 V.S.A. § 814(d) was enacted subsequent to Perry, and after the conduct giving rise to this case, and codifies its principle: "An agency having jurisdiction to conduct proceedings and impose sanctions in connection with conduct of a licensee or former licensee shall not lose jurisdiction if the license is not renewed or is surrendered or otherwise terminated prior to initiation of such proceedings." The predicate circumstance is that the agency must 'have jurisdiction to conduct proceedings and impose sanctions.' Since there was no statutory authority for the Board to conduct proceedings and impose sanctions against Dr. DaSilva in the first place, since he was neither a licensee nor an applicant, the circumstances present in Perry were not in place in this case.

The Alaska misconduct and discipline all occurred long after Dr. DaSilva's Vermont license expired. At this point, for purposes of the issue on this appeal, he stands in the same shoes as a person licensed in another state who has never been licensed in Vermont. His prior connection to Vermont is a fact that does not confer any authority upon the Board under any statute. Just as Vermont has no legitimate statutory interest in disciplining out-of-state persons unless they are either a licensee or an applicant, it has no legitimate statutory interest in disciplining Dr. DaSilva, who presently has no connection to Vermont and has not been either a licensee or applicant at any time since well before the Alaska incident, including both the conduct giving rise to discipline and the reprimand. At such time as Dr. DaSilva should ever decide to present himself as an applicant, he will become subject to the authority of the Board pursuant to the statutes discussed above and the reasonable construction of statutory authority in Perry. At this time, however, the Board has no statutory authority to discipline him.

Reversed.

Dated at Montpelier, Vermont this ___ day of August, 2003.

_____
Mary Miles Teachout
Superior Court Judge

6