NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 82

No. 2015-458

In re Stephanie H. Taylor, M.D.                          Supreme Court

                                                         On Appeal from
                                                         Medical Practice Board

                                                         March Term, 2016


Robert Hayward, Chair

Edward G. Adrian of Monaghan Safar Ducham PLLC, Burlington, for Appellant.

William H. Sorrell, Attorney General, and Jacob A. Humbert, Assistant Attorney General,
  Montpelier, for Appellee.


PRESENT:   Reiber, C.J., Dooley, Skoglund and Eaton, JJ., and Tomasi, Supr. J.,
           Specially Assigned


¶ 1.   **SKOGLUND, J.**   Dr. Stephanie Taylor appeals from a decision of the Vermont Medical Practice Board denying her request to vacate the provisions of a 2005 consent order in which she agreed to a "final and irrevocable" surrender of her medical license. Dr. Taylor contends the Board erroneously: (1) failed to determine whether there were "less restrictive means available to regulate [her] conduct"; (2) violated her right to due process by "shift[ing] the burden onto [her] . . . to guess at the Board's requirements for reinstatement;" (3) relied on the specification of charges that led to the earlier consent order; and (4) considered a Massachusetts decision revoking her medical license in that state. We affirm.

¶ 2.    This is the second appeal to reach the Court in this matter.  See In re Taylor, 2015 VT 95, ___ Vt. ___, 128 A.3d 422.  In the first appeal, we recounted Dr. Taylor's "long and troubled" disciplinary history, which began in 1996 with a consent order in which she admitted to a "chemical addiction" that posed a threat to the safety of her patients, a "mental impairment" that affected her competence to practice, and a "disregard for the fundamental principles of doctor-patient boundaries."  Id. ¶ 2.  Dr. Taylor agreed at the time to an indefinite suspension of her license and numerous conditions for reinstatement, including a stipulation that she not return to the practice of psychiatry, address her substance abuse and mental health issues, and refrain from prescribing medications for family members.  Id.

¶ 3.    In June 2000, the Board agreed to amend the consent order to allow Dr. Taylor to pursue a family practice residency at Tufts University in Massachusetts.  Dr. Taylor simultaneously entered into an agreement with the Massachusetts Board of Registration in Medicine limiting her practice to activities within the residency and otherwise placing her on indefinite suspension with numerous conditions for full reinstatement.  Id. ¶ 3.  After completing the residency, Dr. Taylor entered into a further consent order for a conditional license to practice medicine in Vermont subject to many of the earlier conditions.  Id. ¶ 4.  Not long thereafter, however, the Massachusetts medical board suspended Dr. Taylor's conditional license for failure to comply with drug testing, and the Vermont Board launched a new investigation, ultimately filing a complaint against Dr. Taylor alleging twenty-five counts of professional misconduct, including allegations that she materially breached provisions of the previous consent orders, improperly prescribed medications, violated professional boundaries, and failed to adhere to professional medical standards.  Id. ¶ 5.

¶ 4.    The new charges led to further stipulation and consent order in August 2005.  While entering no admission to the charges, she agreed that the order was "an acceptable means of resolving the matter" and "in the interests of all parties."  Id. ¶ 6.  Under the order, Dr. Taylor

2

agreed to surrender her medical license, and further agreed that the "surrender of her license shall be final and irrevocable" and that she would not seek relicensure or reinstatement. Id.

¶ 5.   Notwithstanding her agreement, Dr. Taylor submitted separate applications for reinstatement to the Board in May 2013 and March 2014.  The State, in response, acknowledged that the Board retained the authority to modify the 2005 consent order to remove the restrictive clauses as a precondition to an application for relicensure.  Following additional briefing, the Board held an evidentiary hearing in July 2014, and shortly thereafter issued a brief, one-page written decision denying Dr. Taylor's request. Id. ¶ 13.

¶ 6.   We reversed the decision on appeal and remanded to the Board for additional findings to explain the "basis of its ruling." Id. ¶ 17.  In so holding, we expressed no opinion on the merits of the underlying decision, and left it to the Board to decide whether to "rely on the existing record, or reopen the hearing for further evidence." Id. ¶ 20.  We also acknowledged that, in the interests of fairness, the State would be afforded the opportunity to relitigate the original charges, and the Board the discretion "to consider the nature and gravity of the original charges and the pattern of behavior over time that they may reveal." Id.

¶ 7.   Following our remand, the State informed the Board and Dr. Taylor that it would not seek to reopen the charges or introduce new evidence, and confirmed that "the matter on remand is ready for decision on the existing record."  The parties filed proposed findings and conclusions, and presented argument at a hearing before the Board in October 2015. The Board issued its decision the following month, again denying Dr. Taylor's request.  The fourteen-page ruling contains extensive findings and conclusions, and ultimately holds that Dr. Taylor failed to adduce sufficient evidence of her rehabilitation to support a conclusion that the permanent surrender of her license was no longer necessary to protect the public and the integrity of the profession.  This appeal followed.

¶ 8. Dr. Taylor first asserts that the Board erred in failing to determine whether there were "less restrictive means available to regulate [her] conduct" short of denying her request to vacate the irrevocable-surrender clause in the 2005 consent order and allow her to apply for reinstatement. She relies on language in 26 V.S.A. § 3101, which sets forth the general legislative "[p]olicy and purpose" for regulation of the professions in Vermont. In pertinent part, the statute provides:

> It is the policy of the state of Vermont that regulation be imposed upon a profession or occupation solely for the purpose of protecting the public. The legislature believes that all individuals should be permitted to enter into a profession or occupation unless there is a demonstrated need for the state to protect the interests of the public by restricting entry into the profession or occupation. If such a need is identified, the form of regulation adopted by the state shall be the least restrictive form of regulation necessary to protect the public.

26 V.S.A. § 3101.

¶ 9. The Board rejected Dr. Taylor's argument, concluding that by its plain terms § 3101 applies exclusively to the standards for "entry" into the medical profession, and does not govern the Board's decision on whether to modify the terms of an earlier, disciplinary consent order. We agree. In construing a statute, it is axiomatic that "[w]e first look to the plain language" and, if clear on its face, we enforce it according to its ordinary meaning "without resort" to the canons of statutory interpretation. In re Porter, 2012 VT 97, ¶ 10, 192 Vt. 601, 70 A.3d 915; accord Kapusta v. Dep't of Health/Risk Mgmt., 2009 VT 81, ¶ 8, 186 Vt. 276, 980 A.2d 236 ("[W]e look to the statute's plain meaning when the language is clear and unambiguous."); Heisse v. State, 143 Vt. 87, 89, 460 A.2d 444, 445 (1983) (explaining that "the most elemental rule of statutory construction is that the plain meaning . . . controls" and if "ambiguity does not appear, then the statute is not construed but rather is enforced in accordance with its express terms").

¶ 10. Here, the statute expresses a clear legislative policy favoring free entry into a profession or occupation absent a "demonstrated need to protect the public by restricting entry,"

4

and directs that if "such a need is identified" the regulations adopted by the state shall be "the least restrictive . . . necessary to protect the public." 26 V.S.A. § 3101. Thus, by its plain and unambiguous terms the statute's "least restrictive" form of regulation applies only to those regulations governing "entry" into a profession or occupation. Nothing in the language of the statute extends its reach to the circumstances presented here, involving a discretionary decision by the Board on whether to modify an earlier consent order sanctioning a licensed physician.

¶ 11. Dr. Taylor's several arguments to the contrary are unpersuasive. She asserts that we have "long held that this broad mandate of public protection . . . applies to determinations of unprofessional conduct." While Dr. Taylor is correct that the protection of the public comprises an essential goal of professional discipline, we have not held that § 3101 applies outside the context of licensing, and her reliance on Perry v. Medical Practice Board to suggest otherwise is misplaced. 169 Vt. 399, 737 A.2d 900 (1999). Perry concerned the scope of the Board's licensing authority, specifically whether it included the power to deny an applicant's request to withdraw a license application, and it was strictly in that context that we considered § 3101's general public-protection policy, concluding that the "the statutory authority to issue or deny a medical license necessarily implies the discretionary authority to deny leave to withdraw a license application." Id. at 404, 737 A.2d at 904. The Board's disciplinary authority was not at issue.

¶ 12. Dr. Taylor's further suggestion that § 3101 must be read "in pari materia"[1] with and incorporated within the Board's statutory authority to investigate and sanction unprofessional conduct pursuant to 26 V.S.A. § 1361,[2] is equally misplaced. The purpose of construing similar

---

[1] "Statutes in pari materia are to be construed with reference to each other as parts of one system." In re Preseault, 130 Vt. 343, 346, 292 A.2d 832, 834 (1972).

[2] Under 26 V.S.A. § 1361(b), the Board is authorized, upon a finding of unprofessional conduct, to "reprimand the person complained against, as it deems appropriate; condition, limit,

or related statutes in pari materia is to determine the legislative intent when the statute at issue is ambiguous. See, e.g., Gen. Elec. Co. v. S. Constr. Co., 383 F.2d 135, 138 (5th Cir. 1967) (concluding that, because "there is nothing ambiguous or doubtful about the [statutory] language . . . [t]here is, therefore, no occasion to resort to . . . the rule of construction in pari materia"); Heffernan v. Harbeson, 2004 VT 98, ¶ 7, 177 Vt. 239, 861 A.2d 1149 (noting that, where statute's "scope and meaning are readily apparent, no construction is necessary" while "[i]n cases where there is doubt or ambiguity . . . we discern legislative intent by . . . reading integral parts of the statutory scheme together"). Here, as noted, the scope of the statute is plain, and resort to statutory construction aides is unnecessary.

¶ 13. The same conclusion applies to Dr. Taylor's assertion that, where "there is any ambiguity concerning the parameters of 26 V.S.A. § 3101 then [we] should apply the 'rule of lenity.' " See State v. Hurley, 2015 VT 46, ¶ 17, 18 Vt. 552, 117 A.2d 433 (explaining that the "rule of lenity" applies to "penal laws" and "requires that any doubts created by ambiguous legislation be resolved in favor the defendant" (quotation omitted)). Even assuming, without purporting to decide, that the Board's decision in this case could be characterized as "penal" in nature, we discern no statutory ambiguity requiring invocation of the rule. See State v. Wainwright, 2013 VT 120, ¶ 6, 195 Vt. 370, 88 A.3d 423 (observing that rule of lenity "does not apply if the statutory language is unambiguous").

¶ 14. Dr. Taylor next contends that the Board violated her procedural due process rights by "requiring her to guess at the Board's requirements for reinstatement." The claim is also unpersuasive. As Dr. Taylor conceded below, it was her burden to persuade the Board to vacate

---

suspend, or revoke the license . . . of the person complained against; or take such other action relating to discipline or practice as the board determines is proper."

6

the irrevocable-surrender provision in the consent order to which she had stipulated.[3] To do so, it was incumbent upon her to address the circumstances that resulted in the order in the first instance. Indeed, in her letter to the Board seeking reinstatement, Dr. Taylor expressly acknowledged that the question was whether the charges that resulted in the consent order continued to justify a "permanent revocation effectuated through a[n] 'irrevocable surrender,' " charges which she stated (somewhat euphemistically) could be "distilled down to: (1) poor judgment, 2) boundary violations, and 3) being less than forthcoming with the board and its investigatory staff." Dr. Taylor argued repeatedly to the Board that, in the years since the 2005 consent order, she had achieved sufficient "rehabilitation" to apply for reinstatement. The argument plainly preresupposed the need to redress or "rehabilitate" the character and conduct issues that led to her earlier suspensions and ultimately resulted in the surrender of her license.

¶ 15. In her testimony and submissions to the Board, Dr. Taylor described her professional accomplishments since surrendering her medical license, her remarriage, her son's achievements, and her aspirations to work as a licensed physician with vulnerable and less fortunate people. As the Board explained, however, Dr. Taylor adduced no persuasive evidence that addressed—to use her terms—the underlying lapses in judgment and boundary issues that led to her prior suspensions and culminated with the permanent surrender of her license. Dr. Taylor's capacity for high academic and professional achievement has never been in doubt. Her failings have consistently been in the area of her professional judgment, discipline, and self-regulation, and here we must agree with the Board that she did not adduce evidence sufficient to demonstrate significant change or rehabilitation. Accordingly, we find no error.

---

[3] Dr. Taylor's proposed findings and conclusions acknowledged that the law placed the "burden squarely on Dr. Taylor in proving [sic] to the Board by a preponderance of the evidence that her license to practice medicine in Vermont should be reinstated."

¶ 16. Dr. Taylor asserts a second due process violation based on the Board's consideration of the charges that resulted in the 2005 consent order. Dr. Taylor's claim to the contrary notwithstanding, this Court expressly authorized the Board on remand to "take account of [Dr. Taylor's] admission that the stipulation was 'in the best interest of the parties' and to consider the nature and gravity of the original charges and the pattern of behavior over time that they may reveal." In re Taylor, 2015 VT 95, ¶ 20. In its decision, the Board was careful to explain that it "did not consider the charges as proven" but rather had taken account of the nature of the charges in light of Dr. Taylor's prior discipline, and of her admission that the stipulation was in her best interests, as this Court expressly authorized. Accordingly, we find no error. Dr. Taylor's additional reliance on In re Dell, 668 A.2d 1024 (N.H. 1995) is decidedly misplaced. There, a physician seeking re-licensure similarly claimed that the medical board violated his due process rights by relying on certain misconduct charges that had been nolle prossed. Consistent with our decision here, the court rejected the claim, concluding that absent a showing of prejudice "the board properly considered the allegations of negligence and misconduct marked nolle prosequi pursuant to the consent order." Id. at 1035.

¶ 17. Lastly, Dr. Taylor contends the Board committed reversible error by relying on a 2007 order of the Massachusetts Board of Registration revoking Dr. Taylor's "right to renew her medical license" in that state. She notes that the order was not a part of the existing record prior to the remand, that the State had informed the Board and Dr. Taylor that it considered the "matter on remand [to be] ready for decision on the existing record," and thus Dr. Taylor asserts that the Board's decision to take judicial notice of the order was unfair and prejudicial.

¶ 18. Whatever the propriety of the Board's admission of the 2007 Massachusetts order, the record here reveals that it was harmless. It was no secret that Dr. Taylor had been sanctioned in Massachusetts; the existing record already showed that Dr. Taylor's license had been indefinitely suspended in Massachusetts in 2000, which was stayed to allow her to enter into a

8

residency program at Tufts University under a stringent set of conditions; and that in February 2004, the Massachusetts board again indefinitely suspended Dr. Taylor's conditional license for noncompliance with its conditions. In re Taylor, 2015 VT 95, ¶¶ 3, 5. Furthermore, as noted, the principal basis of the Board's decision here was Dr. Taylor's failure to demonstrate that she had addressed and resolved the persistent failures of professional judgment that resulted in her prior Vermont suspensions and the ultimate surrender of her license. Accordingly, we discern no prejudicial error, and no basis to disturb the judgment. See In re Miller, 2009 VT 112, ¶ 15, 186 Vt. 505, 989 A.2d 982 (holding that any error in evidentiary ruling by Medical Practice Board was harmless in light of record as a whole).

Affirmed.

FOR THE COURT:

Associate Justice

9