### Grievance of V.S.E.A. (Standby Pay)

[648 A.2d 394]

No. 93-024

Present: **Allen, C.J., Gibson, Dooley and Johnson, JJ.**

Opinion Filed July 1, 1994

*Jeffrey L. Amestoy,* Attorney General, and *Michael Seibert,* Assistant Attorney General, Montpelier, for Appellant State of Vermont.

*Jonathan Sokolow,* Montpelier, for Appellee Vermont State Employees' Association.

**Gibson, J.** The State appeals a decision of the Vermont Labor Relations Board in favor of the Vermont State Employees' Association, Inc. (VSEA). The Board held that social workers in the Bennington and St. Johnsbury offices of the Department of Social and Rehabilitation Services (SRS) had been led to believe they had to be reachable and able to respond to emergency "call-outs" while on "available" status during off-duty hours. The Board ordered SRS to pay the affected workers at a "standby" rate for all hours they had spent on available status since the inception of a new off-hours policy in July of 1990. We affirm.

SRS social workers may be required to provide emergency services during off-hours. The off-hours status categories are defined in the Non-Management Unit and Supervisory Unit collective bargaining agreement (Contract) between the State and VSEA. According to the Contract, workers on "standby" status must be reachable by telephone or beeper so they can respond to a call within one hour and report for duty within one hour of being reached. Workers on "available" status must leave word where they can be reached, but the Contract imposes no travel or response-time restrictions. "Standby" workers are paid one-fifth their normal salary while on standby status; "available" workers are uncompensated. If a worker is called out while on either status, the worker is paid a minimum of four-hours' overtime for providing emergency services.

In July 1990, SRS initiated a cost-cutting program under which district offices could split workers' standby hours into standby and available categories, thereby saving on standby compensation. Division of Social Services Director Stephen Dale sent a memorandum to district directors to clarify the meaning of available status and the Division's expectations regarding it:

> Availability is not stand-by, so there is no specific response time, and the employee does not need to be able to guarantee accessibility to a phone, and there are no specific restrictions on employee travel or behavior. When you reach a worker, you can expect a timely response appropriate to the nature of the emergency and the employee's individual situation. Our expectations must be "reasonable."

VSEA filed a grievance with the Board, see 3 V.S.A. § 926, alleging that due to restrictions imposed or implied by district directors, workers on available status under the new policy were essentially still on standby status without compensation. The Board held hearings in October 1991 and concluded that the policy as promulgated in the Dale memorandum was consistent with Contract provisions regarding the expectations for available status, but that district directors in Bennington and St. Johnsbury violated the Contract in their implementation of the policy.

The Board found that in explaining the policy, the Bennington District Director, Charles Gingo, told workers that if they were on available status but could not respond when reached for a call-out, he would consider disciplining them. Gingo thereafter received further guidance from Stephen Dale concerning available status, in which there was no mention of authority to discipline, but Gingo never retracted his statement to the Bennington social workers. The Board found that as of the date of its first hearing on the VSEA grievance, Gingo still believed discipline would be an option where workers on available status failed to respond.

The Board found that workers in the St. Johnsbury office also believed they were not free to travel while on available status. St. Johnsbury District Director Harry Adamek asked workers to cooperate with a police request for immediate response in emergency off-hours situations, and when questioned how available status fit with this, told workers that response-time expectations for workers on standby and available status were the same. Adamek indicated he might have to impose discipline on workers who could not be reached or were unable to respond to a call-out while on available status.

Based on its findings, the Board concluded that workers in the two offices reasonably believed that while on available status they were "not free to travel where they [could] not be reached and would not be able to quickly respond to a call out." The Board held that such a requirement violated the Contract, and awarded standby compensation plus interest for sixteen workers who had been placed on available status since the inception of the cost-cutting policy in July 1990.*

■ In making factual findings, the Board must employ a "preponderance of the evidence" standard. *In re Muzzy*, 141 Vt. 463, 472, 449 A.2d 970, 974 (1982). We will not disturb the Board's findings so long as credible evidence fairly and reasonably supports them. *Id.* at 470–71, 449 A.2d at 973. The assessment of a witness's credibility is a matter for the special expertise of the Board. See *Ohland v. Dubay*, 133 Vt. 300, 303, 336 A.2d 203, 205 (1975).

■ At the hearing, the Board heard testimony from Division Director Stephen Dale, District Director Gingo, two social workers from Bennington, two from the St. Johnsbury office, and other witnesses. The State's contention on appeal is that the Board's findings were clearly erroneous because the employees' testimony was not credible. There was ample credible testimony to support the Board's findings, however. With respect to the Bennington office, District Director Gingo himself testified that he believed he had the right, under the Contract terms, to discipline a worker on available status who was unable to respond to a situation requiring immediate response. With respect to the St. Johnsbury office, social worker Julie Ainsworth Boardman testified that District Director Adamek conveyed to staff the expectation that they should be reachable by telephone when on available status and able to respond to a call-out so that he would not have to consider disciplinary measures. The State policy is clear, however, that a worker on available status need not be reachable by telephone and would thus not be subject to discipline under such circumstances. The Board's findings were not clearly erroneous, and its conclusion is supported by the findings.

---

* The Board held a hearing on the State's motion to reconsider, and thereafter revised its order for payment to the Bennington and St. Johnsbury social workers. The Board found that a memorandum from Stephen Dale dated October 25, 1991, just after the last Board hearing, clearly permitted unrestricted travel to those on available status. The Board therefore ordered back pay to be computed from the date of the policy inception in July 1990 to the date at which the Dale memorandum came to the workers' attention in each of the two offices.

The State also contends there was insufficient evidence to support a finding that nontestifying workers believed their freedom of travel was restricted. The issue was not raised by the State during the hearing, or in the State's motion for reconsideration following issuance of the Board's decision, or at the hearing on the reconsideration motion. As a result, the Board declined to address the issue in its opinion following the hearing on reconsideration. In effect, the Board treated the issue as not having been preserved by the State, and we are inclined to agree. In any event, the Board allowed testimony from the witnesses as to their own understanding of the meaning of "available" status, and that testimony supports the finding as to the understanding of the other workers in their respective offices. The witnesses testified about office meetings and discussions that had taken place, and that all of the workers had conformed their conduct to the general understanding. The evidence supports the Board's decision, and the State's argument is therefore meritless.

*Affirmed.*