2005 VT 129

## In re Grievance of Vermont State Employees' Association, Inc. and Diane Dargie

[893 A.2d 333]

No. 04-141

Present: Reiber, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed December 23, 2005

*Beth Robinson* and *Lisa B. Shelkrot* of *Langrock Sperry & Wool, LLP*, Middlebury, for Plaintiffs-Appellants.

*William H. Sorrell*, Attorney General, and *Bridget C. Asay* and *Kevin O. Leske*, Assistant Attorneys General, Montpelier, for Defendant-Appellee.

¶ 1. **Skoglund, J.** This appeal concerns the right of a State of Vermont employee to request and receive union representation during a meeting with management where no disciplinary action against the employee is contemplated. The Vermont Labor Relations Board held that Article 14, § 7 of the collective bargaining agreement between the State of Vermont and the Vermont State Employees Association (VSEA) did not entitle the employee in this case, Diane Dargie, to insist on the presence of a union representative under the facts presented. VSEA appeals, claiming that the Board's decision eviscerates the contract right of union representation in situations where the employee believes she may be subject to discipline. Because we find no error in the Board's decision, we affirm.

¶ 2. The Board's unchallenged factual findings establish the following series of events. On January 27, 2003, grievant Diane Dargie, a District Seven bridge mechanic for the Agency of Transportation (AOT), was asked by her immediate supervisor to attend a meeting with him and the District Seven foreman after the lunch break. Grievant asked whether she needed a VSEA representative with her at the meeting, and the supervisor told her to ask the foreman. When grievant met the foreman in the office after lunch, she asked him why he wanted to meet with her and whether she should have a union representative with her. The foreman did not answer the questions and escorted grievant to her supervisor's office.

¶ 3. Once in the office, grievant's supervisor and the foreman addressed grievant's work absences. The previous week, grievant had taken a day off without getting advance approval from her supervisor. The foreman told grievant that she must get permission twenty-four hours in advance to take time off from work. The exchange between the foreman and grievant became heated. At one point, grievant picked up the telephone and tried to call Gary Hoadley, her VSEA representative. The foreman instructed grievant to put the telephone down. When he told her to hang up a second time, the foreman also warned

that grievant would be charged with insubordination if she remained on the telephone. Grievant finally complied and left the office.

¶ 4. Three days later, on January 30, the foreman asked to meet with grievant again. Like the last time, the foreman did not tell her the purpose of the meeting. Grievant called Hoadley and asked him to attend the meeting with her. When Hoadley and grievant arrived at the District Seven office, the foreman told Hoadley that he had no right to attend the meeting with grievant. The foreman and grievant then met alone for less than one minute. The foreman handed grievant a performance feedback form, which noted grievant's unauthorized absences from work. The document advised grievant to comply with the provisions in the collective bargaining agreement regarding notice and approval of planned time off from work. The feedback form also described grievant's "completely uncooperative" and disruptive behavior during the January 27 meeting. Grievant was advised that further incidents of "uncooperative, disruptive or insubordinate behavior will be addressed through progressive discipline, as described in Article 14 of the Contract." Grievant left the meeting with a copy of the document in hand. Although grievant was not disciplined for her unauthorized work absences or her uncooperative behavior on January 27, she filed a grievance against AOT on May 16, 2003.[1]

¶ 5. Grievant claimed, among other things, that the State violated her rights under Article 14, § 7 of the state employees' collective bargaining agreement by preventing her from consulting with Hoadley during the January 27 meeting and by refusing Hoadley admittance to the January 30 meeting with grievant and her foreman. The Board rejected both contentions. The Board construed Article 14, § 7 to mean that an employee has the right to request and receive union representation (1) whenever the employee is asked by management to provide information about an issue that could result in discipline against the employee, and (2) whenever the employer calls a meeting with the employee for the purpose of imposing discipline. The Board found that neither circumstance was present in this case. The January 27 meeting was called to discuss grievant's unauthorized absences from work, but was neither investigatory nor disciplinary in nature. Similarly, the brief meeting on January 30 was neither investigatory nor disciplinary; its

---

[1] The May 16 grievance was the second of two filed by grievant in 2003. The first grievance, filed in March 2003, dealt with an unrelated investigation of wrongdoing at the District Seven office.

purpose was to give grievant feedback on her work performance. Accordingly, the Board dismissed the grievance, and VSEA appealed.[2]

¶ 6. The central issue on appeal concerns the scope of an employee's rights under Article 14, § 7 of the collective bargaining agreement, which states in relevant part:

> Whenever an employee is required, by his or her supervisor or management, to give oral or written statements on an issue involving the employee, which may lead to discipline against the employee, or whenever an employee is called to a meeting with management where discipline is to be imposed on the employee, he or she shall be notified of his or her right to request the presence of a VSEA representative and, upon such request, the VSEA representative shall have the right to accompany the employee to any such meeting. The notification requirement shall not apply to the informal initial inquiry of the employee by his or her supervisor without knowledge or reason to believe that discipline of the employee was a likely possibility.

VSEA argues that Article 14, § 7 expands upon the right of union representation that the Supreme Court upheld in *National Labor Relations Board v. J. Weingarten, Inc.*, 420 U.S. 251 (1975). Under *Weingarten*, VSEA explains, an employee's right to union representation during a meeting with management arises whenever the employee reasonably believes that the employer is contemplating discipline. VSEA's contract with the State of Vermont goes beyond the limits of *Weingarten* by requiring the State to provide notice to the employee of her rights to union representation. VSEA argues that the notice requirement in Article 14, § 7 was not intended to replace the employee-focused nature of the right to representation. Thus, according to VSEA's interpretation of the agreement, an employee may insist upon union representation during a meeting with management whenever the employee believes discipline is a possibility — whether

---

[2] The Board's order addresses other claims raised by grievant and the union. For example, during the course of investigating employee misconduct at the District Seven office, a paralegal with the Department of Personnel warned grievant not to discuss the investigation with any coworker unless the coworker is the union steward. The Board determined that the restriction was overly broad because it prohibited grievant from discussing the investigation with a nonsteward union representative who was also a state employee. That ruling is not part of this appeal.

or not the employer is, in fact, contemplating discipline and whether or not the notice required by Article 14, § 7 has been provided.

¶ 7. The Board rejected VSEA's construction of Article 14, § 7, and we review that decision with substantial deference. *In re Gregoire*, 166 Vt. 66, 72, 689 A.2d 431, 435 (1996). To better understand the Board's conclusion and VSEA's claims, we turn to the United States Supreme Court's decision in *Weingarten*.

¶ 8. *Weingarten* concerned the right of employees, under § 7 of the National Labor Relations Act (NLRA), 29 U.S.C. § 157, to act together for their mutual aid and protection in the context of an employer's investigation into employee misconduct. When an employee is confronted by her employer about a matter that could result in discipline, § 7 of the NLRA allows the employee to seek assistance from a union representative. The Supreme Court explained that in those circumstances the union representative can safeguard both the employee's interests and the interests of other union members "by exercising vigilance to make certain that the employer does not initiate or continue a practice of imposing punishment unjustly." *Weingarten*, 420 U.S. at 260-61. Therefore, the Court held, an employer commits an unfair labor practice when it denies an employee's request for union representation during an investigative interview that the employee reasonably believes might result in discipline. *Id.* at 260.

¶ 9. An employee's *Weingarten* right to union representation is not without limits. The right is "limited to situations where the employee reasonably believes the investigation will result in disciplinary action," and where the employee asks for union representation. *Id.* at 257. Thus, only investigatory interviews leading to disciplinary action or meetings where discipline will be imposed are subject to *Weingarten*. The Supreme Court further explained that an employee's exercise of *Weingarten* rights may not "interfere with legitimate employer prerogatives," and that during the investigatory interview, the employer is under no obligation to bargain with the union representative. *Id.* at 258.

¶ 10. In this case, the Board determined that VSEA presented insufficient evidence that the meetings of January 27 and 30 were "investigative interviews concerning whether Dargie should be disciplined." VSEA does not challenge that finding. Rather, VSEA contends that the critical factor here is grievant's "objectively reasonable" belief that the meetings to which she was summoned would address whether discipline should be imposed for her unauthorized work absences. Accordingly, VSEA argues, grievant's AOT supervisor and the District

Seven foreman should have permitted her to speak or meet with Hoadley. We disagree.

¶ 11. The Board determined that Article 14, § 7 of the collective bargaining agreement embodied the representation rights established by *Weingarten*. The Board also concluded, however, that the notice provision in Article 14, § 7 modified the circumstances that trigger the right to union representation during an employer/employee confrontation. The parties' contract identifies the trigger as notice from the employer, not the employee's belief about what might result from a meeting with a supervisor. We note that Board precedent prohibits the imposition of discipline if the State fails to give notice of an employee's *Weingarten* rights when the circumstances require it in accordance with Article 14, § 7. VSEA has not demonstrated error in the Board's interpretation of the parties' agreement.

¶ 12. When considered in light of *Weingarten*'s reasonableness standard, the soundness of the Board's decision is also apparent. *Weingarten* applies when the employee holds a reasonable belief that discipline may be imposed following an investigatory interview. See *id.* at 257 ("[T]he employee's right to request representation as a condition of participation in an interview is limited to situations where the employee reasonably believes the investigation will result in disciplinary action."). VSEA argues that grievant reasonably believed that she might be disciplined and therefore was entitled to Hoadley's assistance at both the January 27 and January 30 meetings. But grievant's belief was legally unreasonable in light of the notice provision in Article 14, § 7 and the Board's policy to vacate any punishment imposed in the absence of such notice. Stated differently, because the *Weingarten* right to union representation arises only when discipline is a possibility, and because the State must notify an employee of the right to representation when those circumstances exist, or forgo discipline altogether, it is unreasonable for an employee to believe that discipline is under consideration in the absence of the Article 14, § 7 notice. In this case, grievant had no basis to believe she was going to be disciplined when called to the January 27 and 30 meetings because AOT had not provided her with notice of her *Weingarten* rights in accordance with the parties' contract.

¶ 13. VSEA argues that the Board's interpretation of the parties' agreement guts the protections *Weingarten* affords to union members in their interactions with management. In our view, the Board's interpretation has the opposite effect. In contrast to Article 14, § 7, *Weingarten* stopped short of imposing on management the burden to

notify an employee of his or her right to union representation. Article 14, § 7 thus goes beyond *Weingarten* by placing an affirmative responsibility on the employer to ensure that the employee knows about, and can therefore exercise, her *Weingarten* rights. Moreover, the notice provision affords a measure of certainty, otherwise lacking under *Weingarten*, about what an employee's rights are when called by management to a meeting. In this case, when grievant was summoned to the January 27 meeting, she could have confidence that no discipline was forthcoming because she was not given notice of her right to union representation as required by Article 14, § 7. Indeed, discipline never resulted from the meetings that gave rise to this dispute. We agree with the Board that Article 14, § 7 gives covered employees more, not less, protection than *Weingarten* alone affords.

¶ 14. VSEA argues that this Court should find Article 14, § 7 ambiguous and examine its language in light of its history. The Board found no factual support for VSEA's claims, but VSEA nevertheless asks us to review the issue anew. Ultimately, we conclude that VSEA's argument is unavailing because, like the Board, we find no ambiguity in Article 14, § 7's language.

¶ 15. Ambiguity exists where the disputed language will allow more than one reasonable interpretation. *Isbrandtsen v. N. Branch Corp.*, 150 Vt. 575, 577-78, 556 A.2d 81, 83-84 (1988). In such cases, this Court will examine the background leading to the agreement to ascertain the parties' true intent. *Id.*; see also *In re Gorruso*, 150 Vt. 139, 143, 549 A.2d 631, 634 (1988) (explaining how the Court ascertains contracting parties' intent when a contract's language "will admit of more than one interpretation"). The plain language used in Article 14, § 7 has only one reasonable meaning. The provision effectuates the right to union representation outlined in *Weingarten* by directing the employer to explicitly advise employees of the right when circumstances give rise to it. Delving into the history of the State's collective bargaining agreement with VSEA is, therefore, unnecessary here.

¶ 16. VSEA next argues that the Board has interpreted the Vermont State Labor Relations Act, 21 V.S.A., chapter 19, to incorporate the *Weingarten* right to union representation. See 21 V.S.A. § 1503 (providing that state employees have the right to engage in concerted activities for their mutual aid and protection). Because this argument is based on a premise we reject — that the Board's interpretation of Article 14, § 7 affords less protection than *Weingarten* — we need not address it. We note again, however, that the parties negotiated a contract that modifies the circumstances giving rise to the *Weingarten*

right to union representation in a manner that is more protective of the employee's interest.

¶ 17. Finally, we reject VSEA's contention that the Board erroneously interpreted Article 14, § 7 to somehow eliminate the need for the employee to request union representation in order to receive it. As we explained earlier, the United States Supreme Court's holding in *Weingarten* requires the employee to ask for union representation. The Board's decision is not inconsistent with that holding. Article 14, § 7 still directs the employee to make the request for representation:

> Whenever an employee is required, by his or her supervisor or management, to give oral or written statements on an issue involving the employee, which may lead to discipline against the employee, . . . he or she shall be notified of his or her *right to request* the presence of a VSEA representative and, *upon such request*, the VSEA representative shall have the right to accompany the employee to any such meeting.

(Emphasis added.) The only difference between the contract right at issue here and the right established by *Weingarten* is the contract also gives the employee the right to notice that assistance of a union representative is permitted. The Board did not err in its interpretation of Article 14, § 7.

*Affirmed.*