*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2010-473

JULY TERM, 2011

| | |
|---|---|
| In re Grievance of Lawrence Rosenberger | } APPEALED FROM: |
| | } |
| | } Labor Relations Board |
| | } |
| | } DOCKET NO. 05-034 |

In the above-entitled cause, the Clerk will enter:

Grievant Lawrence Rosenberger appeals from a decision of the Labor Relations Board upholding his dismissal from employment with the Department of Fish and Wildlife. We affirm.

This is the second appeal to the Court in this matter. In the first, we reversed the Board's decision to reinstate grievant, holding that the Board erred in excluding certain evidence from the administrative hearing. In re Rosenberger, 2009 VT 18, 185 Vt. 343. On remand, the Board heard additional testimony from grievant, and based on that testimony, the previously excluded evidence, and the record as a whole, issued a new decision upholding grievant's dismissal. This appeal followed.

Most of the material facts are set forth in detail in the first opinion, and may be summarized for our purposes here as follows. Grievant was employed as a game warden for the Department of Fish and Wildlife for about eighteen years before his dismissal in August 2005. The incident that triggered the discipline occurred that spring. On the morning of March 26, 2005, grievant responded to a report of a dead deer on the Circumferential Highway in Essex, picked up the deer, and decided to give it to Joe Gaudette, an acquaintance of many years. Joe declined the deer but suggested that grievant drop it off with his brother, Bob, which grievant did that morning. Id. ¶ 4.

Later that evening, at approximately 8:32 p.m., grievant called a public safety dispatcher to report that he was responding to a report of an injured deer on the Circumferential Highway in Essex. Grievant identified the complainant as someone named Gaudette although the first name was not clear from the dispatch recording. A subsequent transmission shows grievant calling at about 9:00 p.m. to report that he had completed the call. Under Department rules at that time, off-duty wardens who responded to a report of an injured deer, referred to as a "call out," were entitled to four hours of overtime compensation. Wardens were not entitled to call-out pay for responding to a report of a dead deer. Id. ¶¶ 3-5.

About a week later, on April 2, 2005, grievant submitted a time report claiming compensation for the call-out. Two days later, on the morning of April 4, 2005, grievant's supervisor, Lieutenant Lutz, was reviewing the time report when he noticed that the timeframes set forth in grievant's report did not appear to be sufficient to respond to a call-out and deal with an injured deer in the location reported, and he spoke with grievant about the matter that afternoon. Grievant appeared nervous and emotional during the conversation, and was unable to

provide consistent details about the call-out. Lutz ultimately asked grievant directly whether he had responded to a call-out on March 27, and grievant admitted that he had not done so. Lutz, in response, told grievant that he would not be paid for the call-out, but that he would not report the incident. Later, however, Lutz had a change of heart and reported the matter to his superior, who ordered a preliminary investigation. After speaking with Joe and Bob Gaudette and reviewing the dispatch tapes, Lutz concluded that grievant had fabricated the call-out. He assigned another officer, Lieutenant Denton, to conduct an internal investigation. Id. ¶¶ 6-7.

Denton conducted two tape-recorded interviews with grievant in April 2005. A representative of the Vermont State Employees Association (VSEA) was present during the interviews. Based on the investigation, grievant was dismissed effective August 22, 2005. Grievant appealed to the Board, which concluded that Lutz had violated a provision of the collective bargaining agreement by failing to inform grievant during the initial interview of his right to a VSEA representative when Lutz became suspicious and asked whether the call-out was legitimate. The Board determined that the proper remedy for the violation was to exclude grievant's admission to Lutz as well as his subsequent admissions to Denton, because they could not be considered independent of the original admission. Id. ¶ 11. Based on the limited evidence before it, the Board concluded that the State had failed to prove the charged misconduct.

We reversed, concluding that the evidence and findings failed to support the Board's conclusion that grievant's later statements were tainted by the initial violation. We concluded that, in fact, the record demonstrated "unequivocally . . . that, before the improper question, the employer already had developed suspicions of [grievant's] wrongdoing, and thus surely would have investigated the matter further and required grievant to respond to questions concerning the suspicious March 27 call-out claim." Id. ¶¶ 23-24. We thus held that the Board erred in disallowing evidence resulting from the State's investigation following the April 4 meeting, and remanded for further proceedings. Id. ¶ 35.

On remand, the Board heard additional testimony from grievant. Grievant testified that a man who identified himself as Gaudette came to his house on the evening in question to report a deer on the Circumferential Highway and that grievant assumed the deer was injured and called dispatch to report the "call out." Grievant then claimed to have a subsequent conversation with the man in his driveway. Although grievant acknowledged that the light was clear, he was still unable to identify the man. Grievant testified that the man clarified that the deer was not injured but, in fact, was dead, and was not in Essex but rather Burlington. Grievant claimed that he then decided not to retrieve the deer immediately but instead to check on bullhead fishermen at another location; that he drove there and observed a man and a boy fishing; that he then parked and cleaned out his truck; and that he then returned home, having forgotten about the dead deer.

Grievant acknowledged that when he called dispatch to "clear" his call at 9:01 p.m., about half an hour after the initial report, he gave the code for a dead adult male deer although he had never seen a deer that evening. He also acknowledged asking for the last four digits of the call so that he could later report it on his time sheet. He further acknowledged that he never corrected his dispatch reports and that he submitted a time sheet for four hours of overtime compensation for an injured-deer call-out that he knew had not occurred.

2

A majority of the Board found that grievant's version of the events in question was not credible, and that he fabricated the injured-deer report to receive call-out compensation. The Board concluded that grievant's dishonesty warranted dismissal. In a separate concurring opinion, one Board member found grievant's factual account to be credible, but agreed with the penalty of dismissal based on grievant's admissions that he failed to correct the original report of an injured deer, falsely reported responding to an adult male deer when he cleared the call, and knowingly submitted a false time report. This appeal followed.

Grievant first contends the Board failed to make certain "critical" findings and that other findings are not supported by the evidence. Our review in this regard is limited. Board decisions are generally presumed to be "correct and reasonable." In re Towle, 164 Vt. 145, 148 (1995). Thus, we will not disturb the Board's findings if they are supported by credible evidence. In re VSEA, 162 Vt. 277, 280 (1994). Furthermore, "[t]he assessment of a witness's credibility is a matter for the special expertise of the Board." Id.

Grievant asserts the Board erroneously found that he lied to his supervisor, Lieutenant Lutz, about his actions on the night in question and failed to make critical findings concerning Lutz's initial interview with grievant on April 4, 2005, about which Lutz later testified that grievant ultimately "was honest with me." The assertions are unpersuasive. The Board's findings acknowledge that grievant ultimately admitted to Lutz that the call-out never occurred, but only after Lutz had questioned him several times about the incident and, according to Lutz, received evasive and non-responsive answers. Moreover, grievant admitted that he submitted a false time sheet to his supervisor, claiming compensation for a call-out that never occurred. Accordingly, we find no error in the Board's finding that grievant misled his supervisor.

Grievant further asserts that the evidence and findings fail to support the Board's conclusion that grievant was not credible and that he had fabricated the call-out. The Board relied on numerous inconsistencies and implausible features in grievant's story, including his inability to identify the man who came to his door that evening, his changing story on the location of the deer from Essex to Burlington, the absence of any corroborating evidence of a dead deer in Burlington that night, his claim that he simply forgot to return for the deer after investigating fishing licenses, inconsistencies in his story as to whether he saw any fisherman when he supposedly went to check on their licenses, and the overall absence of any persuasive evidence corroborating his claimed actions on the evening in question. As noted, the Board is the sole determinant of a witness's credibility, and we will affirm its findings if they are reasonably supported by credible evidence. In re VSEA, 162 Vt. at 280. This standard was amply met in this case.

Grievant's related claim that the Board improperly shifted the burden of proof on this point is equally unpersuasive. In support, grievant cites the Board's finding that claimant offered no "corroborating" evidence to support his version of the events. Merely citing points in grievant's story that were unsupported or inconsistent does not, however, evince an improper shifting of the burden of proof. See In re Chase, 2009 VT 94, ¶ 9, 186 Vt. 355 (rejecting claim that Medical Board has improperly shifted burden of proof simply by noting absence of evidence to support respondent's claims).

Grievant further contends that the Board erred in failing to require clear and convincing evidence that he fabricated the call-out rather than proof by a preponderance of the evidence. We have repeatedly held, however, that preponderance of the evidence "is the usual standard of proof in state administrative adjudications." In re Smith, 169 Vt. 162, 168 (1999); accord In re Brown, 2004 VT 109, ¶ 12, 177 Vt. 365 (stating that burden of proof to establish just cause for dismissal of state employee "must be met by a preponderance of the evidence"); In re VSEA., 162 Vt. at 280 (holding that Labor Relations Board "must employ a 'preponderance of the evidence' standard"). Grievant relies on two cases in which we affirmed agency decisions applying a clear and convincing evidence standard. See Harrington v. Dep't of Emp't & Training, 152 Vt. 446 (1989); Garber v. Dep't of Soc. Welfare, 139 Vt. 487 (1981). In neither case, however, did we endorse or require the higher standard. Indeed, in Harrington we observed that the agency's action was a clear "deviation from the preponderance of the evidence standard normally applied in administrative proceedings," noting that the United States Supreme Court had upheld the preponderance standard even in "a securities fraud disciplinary case . . . despite the fact the proceeding could result in an order permanently barring the licensee from practicing his profession." 152 Vt. at 448-49 (citing Steadman v. SEC, 450 U.S. 91, 102 (1981)). Thus, neither decision, nor any other authority cited by grievant, supports the requirement of a higher standard in cases involving allegations of employee fraud. We find no error.

Grievant next asserts that the Board overlooked substantial evidence of disparate treatment and discrimination. Concerning the claim of differential treatment, grievant testified that his supervisors had responded to problems with another warden's call-outs by striking his time sheets rather than imposing discipline. The evidence showed, however, that the supervisors struck the call-outs for procedural violations such as the failure to include the complainant's name and telephone number. They denied having ever struck a time sheet where there was evidence of a false report, as in grievant's case, and there was no evidence that this had ever occurred. As for the claim of discrimination, grievant testified that his service as a member of VSEA and as an officer of the Wardens' Association had brought him into conflict with his supervisors in the past, and that he had been actively critical of his supervisors for failure to address time-sheet abuses by the other wardens. The Board concluded, however, that there was no evidence from which to infer any connection between grievant's protected activities and the misconduct charges, and the record supports the finding. Cf. In re Rosenberg, 2004 VT 42, ¶ 11, 176 Vt. 641 (mem.) (holding that employer's unlawful motive may be inferred from contextual circumstances where direct evidence is lacking, such as when evidence shows "climate of coercion" or temporal proximity between protected activity and discipline). The Board found no contextual evidence to suggest that the discipline was suspiciously timed, or grew out of a coercive climate, or was related to grievant's criticisms of his supervisors in the past. Accordingly, we find no basis to disturb the ruling.

Finally, grievant contends that the Board erred in rejecting his claim that his dismissal constituted an improper increase in punishment. Grievant argued that his supervisor's initial decision to strike the call-out and merely warn him that in the future all call-outs would be "strict SOP" was an exercise of disciplinary action; thus, the later decision to dismiss him for the false call-out was an improper increase in punishment for the same offense. The Board noted that the collective bargaining agreement recognizes four forms of punishment—oral reprimand, written reprimand, suspension, and dismissal—and found that the supervisor's response was not disciplinary action triggering protection against further discipline.

4

The Board's decision was sound. Although grievant suggests that the supervisor's statement was in the nature of an "oral reprimand," none of the surrounding circumstances support a finding that this was the parties' intent or understanding. On the contrary, the supervisor's actions were in the nature of preliminary "corrective action" rather than formal discipline. This conclusion is supported by the absence of any notice to grievant of his right to representation at the meeting with his supervisor, which would have been required under the collective bargaining agreement if discipline had been contemplated. See In re VSEA., 2005 VT 129, ¶ 12, 179 Vt. 228 (holding that it was unreasonable for employee to believe that disciplinary action was contemplated in light of rule requiring that State notify employee of right to representation or forego discipline); see also VSEA v. State, 2009 VT 21, ¶ 11, 185 Vt. 363 (noting use of "progressive corrective action" under State employees collective bargaining agreement prior to discipline). Accordingly, we find no error, and no basis to disturb the judgment.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice


_____
Denise R. Johnson, Associate Justice


_____
Marilyn S. Skoglund, Associate Justice